**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WINET LABS LLC,

               Plaintiff,

     v.

MOTOROLA MOBILITY LLC,

               Defendant.

Case No.  1:20-cv-01094

Honorable Harry D. Leinenweber

**MOTOROLA MOBILITY LLC'S MEMORANDUM IN SUPPORT OF**
**<u>ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF ALLEGED FACTS........................................................... 2

    A.    The Alleged Invention of the '374 Patent............................................. 2

    B.    The Alleged Infringement..................................................................... 2

III.   ARGUMENT ................................................................................................... 3

    C.    Legal Principles ................................................................................... 3

    D.    Neither Motorola's Sales of Software nor Its End Users' Use of that Software Make Motorola a Direct Infringer of WiNet's Method Claims............................. 4

        1.    WiNet must allege Motorola's actual performance of the claimed method steps, but the Complaint alleges only its delivery of software .................. 4

        2.    WiNet's conclusory allegations that Motorola "controls" its end users are insufficient to state the claim against Motorola ......................................... 6

            a)    Control is irrelevant when the infringement is not divided ........... 7

            b)    WiNet alleged no facts in support of the alleged control............... 7

        3.    Motorola's distribution of software does not make it liable for its end users' use of the software absent a showing of indirect infringement........ 8

    E.    Motorola is not Responsible for Steps Executed on Third-Party Laptops and, Thus, Cannot Infringe any Claims .................................... 10

    F.    WiNet's Cursory Factual Allegations Fail to Put Motorola on Notice of the Products Accused of Infringement........................................ 12

IV.   CONCLUSION................................................................................................ 13

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)...................................................................7, 8, 10, 12

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) ...........................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................3, 4, 12

*Big Baboon, Inc. v. SAP Am., Inc.*,
    No. 17-CV-02082-HSG, 2018 WL 1400443 (N.D. Cal. Mar. 20, 2018) ...............13

*Bogie v. Rosenberg*,
    705 F.3d 603 (7th Cir. 2013) ...................................................................................13

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)...................................................................................6

*Deep9 Corp. v. Barnes & Noble, Inc.*,
    No. C11-0035JLR, 2012 WL 4336726 (W.D. Wash. Sept. 21, 2012), aff'd,
    504 F. App'x 923 (Fed. Cir. 2013) .............................................................................8

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)................................................................................12

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)..................................................................................8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)............................................................................5, 10

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)..................................................................................3

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ......................................................................................3

*Nalco Co. v. Chem–Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)................................................................................12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)........................................................4

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)........................................................5

*Ricoh Co. v. Quanta Computer Inc.*,
  550 F.3d 1325 (Fed. Cir 2008)......................................................4, 5

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010)....................................................9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................4

*WiNet Labs LLC v. Apple Inc.*,
  No. 5:19-CV-02248-EJD, 2020 WL 409012 (N.D. Cal. Jan. 24, 2020)..................7

**Statutes**

28 U.S.C. § 271(a) ........................................................................3, 5

28 U.S.C. § 271(b)–(c)......................................................................8

**Other Authorities**

Fed. R. Civ. P. 8(a) ..........................................................................3

Fed. R. Civ. P. 12 ..............................................................3, 4, 12, 13

## I.    INTRODUCTION

WiNet alleges that Motorola infringes its patent, but its theories violate basic principles of patent law.[1] The patent claims a method by which several computers can communicate with each other to form a network. WiNet accuses the steps taken by a Motorola smartphone when the smartphone's end user creates a "hotspot" to connect his or her laptop to the internet through the smartphone. Motorola's smartphones do not practice the method claimed in the patent, which is probably the reason WiNet alleges virtually no facts tying the patent's claimed steps to actions taken by the smartphones. Regardless, given the posture of this motion, Motorola will pretend that its smartphones follow the claimed method. Even under that assumption, WiNet's alleged infringement theory is fatally flawed.

Under no circumstances can Motorola directly infringe the method claims by merely selling its smartphones. Instead, any direct infringement occurs by the end users who actually ***use*** the devices to perform the method. While indirect-infringement doctrines can sometimes impose liability on a manufacturer for the direct infringement of its end users, WiNet does not bring a claim for indirect infringement here, no doubt because it cannot possibly plead the requisite facts. Rather than recognizing it has no case, WiNet asserts that Motorola "controls" its end users' smartphones, but this is both irrelevant and unsupported by factual allegations.

Even if WiNet could sidestep the well-settled caselaw barring liability, WiNet's infringement theory requires actions by a laptop computer in communication with the accused Motorola smartphone. WiNet does not allege that Motorola makes or sells laptops (because it does not), let alone allege facts establishing that Motorola is responsible for steps performed by a laptop owned by a third-party end user and distributed by a fourth-party manufacturer.

---

[1] "WiNet" means Plaintiff WiNet Labs LLC; "Motorola" means Defendant Motorola Mobility LLC; "Complaint" means Dkt. No. 1; and "the '374 patent" means U.S. Patent No. 7,593,374.

1

Thus, the Complaint should be dismissed in its entirety and with prejudice because WiNet's alleged infringement theory is flawed as a matter of law.

## II.    STATEMENT OF ALLEGED FACTS

### A.    The Alleged Invention of the '374 Patent

The '374 patent describes "node-equipped electronic devices" that form a wireless communication network. ('374 patent at 2:12–13.)[2] A "node" is a combination of hardware and software that is "either connected to . . . , or embedded in, an electronic device." (*Id.* at 2:17–35, Fig. 13.) The node "enables the electronic device to send data to, and receive data from, other electronic devices" that also have nodes. (*Id.* at 2:35–37.) The patent explains that the nodes emit pings to locate each other, and then one of the nodes is "elected" to be a "coordinating node." (*Id.* at 2:53–67.) The coordinating node then manages communication between the nodes. (*Id.* at 3:16–31.)



*FIG. 13*

The '374 patent includes only method claims; no apparatus or system claims. (*Id.* at 8:49–10:32.) The Complaint asserts claims 1–4, 12, and 13. (Compl. ¶¶ 10, 18–21.)

### B.    The Alleged Infringement

WiNet alleges that Motorola infringes when it "makes, uses, and sells its 'Mobile Hotspot' service," which is "software" on a "Motorola smartphone." (Compl. ¶¶ 10, 12.) In particular, the Complaint says that Motorola is liable for infringement when it "delivers" the software to the end users who purchase its smartphones. (*Id.* ¶ 10.) WiNet also claims that all claimed steps are performed on the smartphone when the end user allegedly sets up a hotspot. (*E.g., id.* ¶ 12 ("The

---

[2] Although WiNet claimed to attach the '374 patent to the Complaint as either "Exhibit 1" or "Exhibit A" (Compl. ¶¶ 8, 11), it neglected at attach anything to the Complaint. For the Court's reference, Motorola attaches the patent as Exhibit A to this motion.

'Mobile Hotspot' service on the Motorola smartphone is comprised of software, and this service performs each step of the Claim 1 method.").) Under these allegations, WiNet asserts that Motorola is liable as a direct infringer under 28 U.S.C. § 271(a). (*See id.* ¶ 10.)

WiNet does not expressly allege that Motorola is liable as a divided or joint infringer, although it does assert that Motorola exercises "control" over its end users' smartphones, albeit without any supporting factual allegations. (*Id.* ¶ 10.) WiNet does not allege indirect infringement. (*See id.* ¶¶ 7–21.)

## III.    ARGUMENT

### C.    Legal Principles

WiNet's direct infringement allegations are measured by the pleading standards of *Twombly* and *Iqbal. See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016). Under *Twombly/Iqbal*, a plaintiff cannot state a viable claim without alleging facts that, taken as true, make that claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating a motion under Rule 12(b)(6), a court first separates the factual and legal elements of a claim, accepting the complaint's well-pleaded facts as true, "but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011); Fed. R. Civ. P. 12. "After excising the allegations not entitled to the presumption, [courts] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *McCauley*, 671 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 681).

A plausible claim does more than merely allege the possibility of wrongdoing; it must show with well-pleaded facts "'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)). Thus, a plaintiff's "obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation and modification marks omitted).

In deciding a Rule 12(b)(6) motion, a court must consider the complaint and its exhibits, documents incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1362 (Fed. Cir. 2015).

### D. Neither Motorola's Sales of Software nor Its End Users' Use of that Software Make Motorola a Direct Infringer of WiNet's Method Claims

WiNet says that Motorola directly infringes the asserted patent's method claims through software preinstalled on Motorola smartphones and delivered to Motorola's end users. Even if the software executed every step of the claims—which it does not—that theory is erroneous as a matter of law.

#### 1. WiNet must allege Motorola's actual performance of the claimed method steps, but the Complaint alleges only its delivery of software

To state a claim for direct infringement of a method claim—the only type of claim at issue in this case—WiNet must plausibly allege that Motorola actually performed each step of the claim. But the Complaint alleges no more than Motorola's delivery of software, so the case should be dismissed.

A defendant cannot infringe a method claim by distributing software that is merely ***capable of performing*** the steps of the claimed method. *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir 2008). To perform a claimed method, a "sequence of actions" must be taken. *Id.* Software is not itself a sequence of actions, but rather it is "a set of instructions that directs hardware to perform a sequence of actions." *Id.* Therefore, "a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under

4

§ 271(a)." *Id.* at 1335; *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014). ("[N]one of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method.").

That is precisely the situation alleged in the Complaint. ***First***, the asserted patent contains only method claims, as opposed to apparatus or system claims. Specifically, it claims "[a] method for forming an ad-hoc network with a plurality of nodes" ('374 Patent at claim 1) and several additional methods that depend on that claim (*id.* at claims 2–20).

***Second***, WiNet identifies software running on a Motorola smartphone—what WiNet characterizes as the "'Mobile Hotspot' service"—as the instrumentality that allegedly performs the claimed method: "The 'Mobile Hotspot' service ***on the Motorola smartphone*** is comprised of software, and this service performs each step of the Claim 1 method." (Compl. ¶ 12.)[3]

***Third***, WiNet alleges infringement based on the mere sale of the smartphones. WiNet's infringement allegations rely on Motorola ***delivering*** a product that is later used by users to allegedly perform the infringing steps of the claimed method. (Compl. ¶ 10.) Indeed, while WiNet alleges that Motorola "delivers" the software, it does not and cannot allege that Motorola actually performs the steps of the method claim.

Hence, this case falls squarely with *Ricoh, Ericsson*, and *Ormco*. Under clear Federal Circuit law, Motorola's mere manufacture of, sales of, or offers to sell "software containing instructions to perform a patented method ***does not infringe*** the patent under § 271(a)." *Ricoh*, 550

---

[3] All emphasis is added unless otherwise noted.

F.3d at 1335. Thus, Motorola's "delivery" of software on an end user device cannot give rise to direct infringement liability.

This conclusion is not challenged by WiNet's assertions that (i) "[t]o deliver the 'Mobile Hotspot' service, Motorola does *not* rely on hardware, software, or firmware within the possession, custody, or control of Motorola product users"[4] or (ii) "Motorola owns and controls the 'Mobile Hotspot' service and associated software, granting a license to the software to the Motorola device user." (*See* Compl. ¶ 10 (emphasis in original).) Neither statement addresses whether Motorola performs the steps of the method. Even if Motorola allegedly sells devices and licenses software that allegedly infringes a method claim when used by a third-party end user, that does not mean that Motorola performed the claimed method steps. *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,* 631 F.3d 1279, 1286 (Fed. Cir. 2011) ("Supplying the software for the customer to use is not the same as using the system.").

Consequently, since WiNet's infringement theory is based on Motorola's distribution of supposedly infringing software, and by law only the end user who runs the software—not the manufacturer who distributes it—is the direct infringer, WiNet's claim for direct infringement must be dismissed.

## 2. WiNet's conclusory allegations that Motorola "controls" its end users are insufficient to state the claim against Motorola

WiNet apparently attempts to pin the end users' use of the software on Motorola through bare allegations of "control," but this fails for at least two reasons. First, while "control" is relevant to a divided infringement theory—a theory where the actions of a person are attributed to another

---

[4] This allegation is contradicted by the Complaint's subsequent paragraphs, which repeatedly rely on hardware and software in the end user's possession. (*See, e.g.,* Compl. ¶¶ 7–21.)

party who controls him—WiNet did not allege divided infringement. Second, even if it did, it failed to plead any facts in support of the alleged control.

### a) Control is irrelevant when the infringement is not divided

Divided infringement—and, thus, a defendant's alleged "control"—is irrelevant when the defendant itself performs *no* steps. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Under the doctrine of divided infringement, when some steps of a claimed method are performed by a first party and the remainder are performed by a second party, all steps will be attributed to the first party—thus making it a direct infringer—if it "directs or controls" the second party's performance." *Id.* But divided infringement and its "direction or control" test applies only when the infringement is *divided*—that is, when no one party performs all the steps. *See id.* As the Federal Circuit said in *Akamai*, the divided infringement test is used "[w]here *more than one actor* is involved in practicing the steps." *Id.* Here, all steps are performed by the end user, so the infringement is not divided, rendering Motorola's supposed "control" irrelevant. *See id*; *see also WiNet Labs LLC v. Apple Inc.,* No. 5:19-CV-02248-EJD, 2020 WL 409012, at *3 n.1 (N.D. Cal. Jan. 24, 2020).

### b) WiNet alleged no facts in support of the alleged control

Regardless, even if the doctrine of divided infringement can be stretched to impart liability on a party that performs *no steps* of the claim, WiNet's complaint still fails to state a claim because WiNet fails to allege facts supporting its bare assertion of "control."

A defendant "directs or controls" a third party's performance of a step when the facts show the following: (i) that it "acts through an agent (applying traditional agency principles) or contracts with another to perform [the step]" or (ii) that it "conditions participation in an activity or receipt of a benefit upon performance of [the step] and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1022–23.

7

WiNet alleges nothing related to the above standards for direction or control. (*See* Compl. ¶ 10.) Instead, WiNet alleges the existence of a supposed "End User License Agreement" without providing any description of what this document is or where it can allegedly be found. (Compl. ¶ 10.) But even accepting the veracity of WiNet's allegations—that such an agreement exists and that end users license, rather than own, the accused software—the allegations would show only that the end users are allowed to use software on the Motorola smartphones, not that Motorola controls their use of that software. Plainly, this fails to satisfy the divided-infringement standard as it says nothing about an agency relationship, contractually compelled performance, conditioning participation on a benefit, or establishing manner or timing of performance. *See Akamai*, 797 F.3d at 1022–23*; see also Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL 4336726, at *13 (W.D. Wash. Sept. 21, 2012), aff'd, 504 F. App'x 923 (Fed. Cir. 2013) ("the fact that [defendant] provides and retains ownership of the software resident on the user's [accused] device is insufficient, as a matter of law, to demonstrate direction or control over the user").

Thus, WiNet's allegations are insufficient to assert a direct infringement claim against Motorola because the steps are exclusively performed by end users and without any control by Motorola.

### 3. Motorola's distribution of software does not make it liable for its end users' use of the software absent a showing of indirect infringement

Through the doctrine of indirect infringement, patent law recognizes a means to hold a manufacturer liable for certain direct infringements committed by its customers. *See* 28 U.S.C. § 271(b)–(c). However, this requires, for example, showing that the manufacturer knew of the patent and encouraged the customer to take acts that the manufacturer knew would constitute infringement. *See DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006). WiNet does not alleged indirect infringement here, no doubt because it cannot.

Unable to plead indirect infringement, WiNet implausibly contends that end users' use of Motorola smartphones (after Motorola sells them) makes Motorola liable as the direct infringer. In correspondence leading up to this motion, WiNet tried to justify this assertion with reference to *SiRF Technology, Inc. v. International Trade Commission*. That case is inapplicable.

In certain circumstances where a manufacturer-owned device performs nearly an entire method, and the remaining step is automatically performed by a manufacturer-produced chip within a device owned by an end user, the manufacturer can be deemed the party that performs every step of the method. *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1329–31 (Fed. Cir. 2010). In *SiRF*, the accused infringer designed, manufactured, and sold GPS chips that were integrated into satellites and end user products. *Id*. at 1323–24. Satellites under the defendant's ownership and control performed all steps in the claimed method except one. *Id*. at 1323–24. End users' products, which included a chip designed by the defendant, automatically performed the remaining step. *Id*. at 1331. *SiRF* held that performing several steps using equipment under defendant's ownership and control along with automatically performing the remaining step by a defendant-designed chip was sufficient to support a claim of direct infringement against the defendant. *Id*. at 1329-31.

Even if *SiRF* provided some exception to the general rule that the accused infringer must perform the method steps directly or through attribution, none of *SiRF*'s facts apply in the present case. First, unlike in *SiRF*, WiNet does not plausibly allege that Motorola performs a single step of the claim using equipment under its control (like the satellite in *SiRF*). (*See* Complaint ¶¶ 7– 21.) WiNet instead alleges that each step occurs on end users' devices outside of Motorola's control. (*See id*. (repeatedly referencing a Motorola smartphone and/or a smartphone with an unidentified third-party laptop).) Second, WiNet does not plausibly allege that any steps performed

on an end user's device occur automatically in response to a signal sent from some equipment controlled by Motorola (like the satellite in *SiRF*). (*See* Complaint ¶¶ 7–21.)

WiNet's allegations and arguments are analogous to those rejected in *Ericsson*. There, the plaintiff alleged defendant infringed by selling computers that performed patented methods. *Ericsson*, 773 F.3d at 1221. Like WiNet, the plaintiff argued that *SiRF* supported its infringement theory. *Id*. However, the Federal Circuit found that *SiRF* was "not applicable because all of the steps of the method [] are performed on the end product, which is controlled by a third party." *Id*. at 1221-22. The Court also found that "[u]nlike the method in *SiRF*, there are no steps automatically performed by equipment controlled by [defendant]." *Id*. It reiterated that *SiRF* "did not create direct infringement liability whenever an alleged infringer sells a product that is capable of executing the infringing method." *Id*. at 1221. And it emphasized that no Federal Circuit decisions "have found direct infringement of a method claim by sales of ***an end user product which performs the entire method***." *Id*. at 1222.

Consequently, WiNet's complaint is fatally flawed through its inability to allege that Motorola itself performs the claimed steps, as opposed to merely delivering software instructions later used by end users.

### E. Motorola is not Responsible for Steps Executed on Third-Party Laptops and, Thus, Cannot Infringe any Claims

Even if Motorola could be deemed responsible for the steps performed by an end user's Motorola smartphone, it is still legally impossible for Motorola to infringe. A defendant cannot directly infringe a method claim unless it executes each and every step of the method. *See Akamai*, 797 F.3d at 1022–23. Here, the asserted method claims require a second device beyond a smartphone—a laptop according to WiNet's allegations—to perform additional steps, and Motorola does not make or sell laptops.

The asserted patent's claims involve two "nodes," and they require each node to take several actions. For example, claim 1 specifies that the second node must "emit[] pings" and "broadcast[] a tag":

> A method for forming an ad-hoc network with ***a plurality of nodes***, the method comprising:
>
>> electing a coordinating node from the plurality of nodes . . . wherein the electing step comprises:
>>
>>> ***emitting pings from <u>each</u> of the nodes*** to locate nodes within a radio range;
>>>
>>> ***broadcasting a tag from <u>each</u> of the located nodes*** to identify each of the located nodes . . . .

('374 patent at claim 1.) Because every other claim in the patent either directly depends on claim 1 (*see, e.g.,* claim 2 ("The method of claim 1 wherein . . .")) or indirectly depends on claim 1 (*see, e.g.,* claim 3 ("The method of claim 2 wherein . . .")), the entire patent has this requirement for action by the second node.

WiNet accuses the Motorola smartphones as having the first node, and it accuses unidentified "laptops" as having the second node: "The Motorola smartphone ***and the laptop computer*** include 'nodes,' which allow these devices to send and receive data among other devices." (Compl. ¶ 12; *see also, e.g., id*. ¶ 11 (accusing a Motorola smartphone and a laptop computer of forming an ad hoc network); *id*. ¶ 16 (accusing a Motorola smartphone and a laptop computer of each broadcasting tags).)

Although its infringement theory depends on it, WiNet does not allege that Motorola makes, sells, or otherwise distributes laptops—presumably because Motorola is in the business of making and selling smartphones, not laptops. Even if it had, that would be insufficient: WiNet must also plead facts showing that Motorola is responsible for the claim steps allegedly performed

by the laptops. *See Akamai*, 797 F.3d at 1022–23. Yet, WiNet offers nothing of the sort. (*See* Compl. ¶¶ 7–21.)

Consequently, WiNet failed to state a claim against Motorola because the asserted patent requires the accused third-party laptops to take steps, but WiNet alleged no facts that could plausibly place responsibility for the performance of those steps on Motorola. Indeed, WiNet did not—because it cannot—even allege that Motorola sells laptops.

### F. WiNet's Cursory Factual Allegations Fail to Put Motorola on Notice of the Products Accused of Infringement

WiNet does not identify any smartphone sold by Motorola—not by name, model number, or other specific descriptor—that supposedly incorporates the allegedly infringing software, and it does not identify the third-party laptops with which the smartphones supposedly practice the claims—again, not by name, model number, other specific descriptor.

Although a plaintiff "need not prove its case at the pleading stage," the complaint must "place the potential infringer on notice of what activity is being accused of infringement." *Nalco Co. v. Chem–Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotation marks, alterations, and citations omitted). While the amount of detail required to be plead about the nature of the alleged infringement varies depending on the complexity of the technology, at minimum the complaint must identify the products accused of infringement. *See Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (even for simple technologies, plaintiff must identify accused products).

Consequently, WiNet must identify the products that supposedly practice the claimed method. Failure to do so denies Defendants "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *Artrip v. Ball Corp.*, 735 F. App'x 708, 715 (Fed. Cir. 2018) (dismissing complaint under Rule 12(b)(6) where plaintiff "did not fairly identify the

accused machines"); *Big Baboon, Inc. v. SAP Am., Inc.,* No. 17-CV-02082-HSG, 2018 WL 1400443, at *4 (N.D. Cal. Mar. 20, 2018) (dismissing complaint under Rule 12(b)(6) where complaint's allegations were "insufficient because nowhere do they allege that a specific product of Defendants' infringes).

IV.    **CONCLUSION**

Because WiNet cannot allege a viable claim of infringement against Defendants as a matter of law, Defendants respectfully ask this Court to dismiss the complaint in its entirety with prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile.").

Dated: May 27, 2020                                     Respectfully submitted,

                                                        */s/ Stephen M. Hankins*
                                                        Stephen M. Hankins
                                                        RILEY SAFER HOLMES & CANCILA LLP
                                                        456 Montgomery Street, 16th Floor
                                                        San Francisco, CA 94104
                                                        t: 415-275-8550
                                                        f: 415-275-8551
                                                        shankins@rshc-law.com

                                                        Louis A. Klapp
                                                        Michael H. Fleck
                                                        RILEY SAFER HOLMES & CANCILA LLP
                                                        70 West Madison Street, Suite 2900
                                                        Chicago, Illinois 60602
                                                        t: 312-471-8700
                                                        f: 312-471-8701
                                                        lklapp@rshc-law.com
                                                        mfleck@rshc-law.com

                                                        *Attorneys for Defendant*
                                                        *MOTOROLA MOBILITY LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.


                             */s/ Stephen M. Hankins*

14