IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WINET LABS LLC,

        Plaintiff,

   v.

MOTOROLA MOBILITY LLC,

        Defendant.

Case No. 1:20-cv-01094

Honorable Harry D. Leinenweber

**MOTOROLA MOBILITY LLC'S REPLY IN SUPPORT OF
<u>ITS MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I. REPLY ................................................................................................................... 1

    A. WiNet Asserts That Its Claim Is Based on a Legal Impossibility, Thereby Dooming Its Claim ................................................................................................ 2

    B. Motorola's End Users' Use of Software Cannot Make Motorola a Direct Infringer of WiNet's Method Claims .................................................................................. 3

        1. Motorola is not a direct infringer merely because its end users use Motorola's software .................................................................................. 3

        2. Motorola's alleged ownership and licensing of the software to end users does not convert Motorola into a direct infringer ...................................... 6

    C. Motorola is not Responsible for Steps Executed on Third-Party Laptops and, Thus, Cannot Infringe any Claims ....................................................................... 8

    D. WiNet's Cursory Factual Allegations Fail to Put Motorola on Notice of the Products Accused of Infringement ....................................................................... 9

IV. CONCLUSION ..................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ................................................................................................ 7

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) .................................................................................................... 9

*Dayco Prod., Inc. v. Total Containment, Inc.*,
   258 F.3d 1317 (Fed. Cir. 2001) ................................................................................................ 8

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ........................................................................................ 4, 5, 6

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008) ............................................................................................ 3, 4

*Sentius Int'l, LLC v. Apple Inc.*,
   No.4:20-CV-00477-YGR, 2020 WL 2850286, at *4 (N.D. Cal. June 2, 2020) ................... 4, 5

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ........................................................................................ 4, 5, 6

**STATUTES**

35 U.S.C. § 271 .............................................................................................................................. 4

I.     REPLY

WiNet's opposition brief confirms that the Complaint does not and cannot state a claim against Motorola, so it should be dismissed with prejudice.[1] In an apparent attempt to distinguish its claim from Motorola's binding caselaw, WiNet principally argues that its infringement allegations are directed at Motorola's software in isolation. But it is legally impossible to infringe method claims without some hardware device executing the software, so WiNet's allegations fail as a matter of law.

Even if the Court ignores the case-ending admissions in WiNet's brief, and instead construes WiNet's theory as directed at smartphones executing the steps embodied within the software, this case still warrants dismissal. WiNet presents no theory under which Motorola could be deemed a direct infringer. The Federal Circuit has emphasized that when an end user's device performs the entire method, the end user—not the manufacturer—is the direct infringer. WiNet's theory that Motorola is liable because it allegedly retains ownership of the software (and licenses it to end users) is supported by no law or judicial decision, and it runs afoul of fundamental principles of patent law.

WiNet's case is also precluded by the patent's requirement that the claimed steps are made by at least two separate devices (*e.g.*, a laptop and a smartphone). No legal theory can make Motorola responsible for the steps taken by laptops that it does not make, sell, own, or control. WiNet tries to bypass this issue by asserting that it does not allege that the laptop takes any steps, but this admits that it has not alleged infringement, as the patent requires the laptop to take certain actions. Consequently, the Complaint must be dismissed.

---

[1] "WiNet" means Plaintiff WiNet Labs LLC; "Motorola" means Defendant Motorola Mobility LLC; "Complaint" means Dkt. No. 1; "the '374 patent" means U.S. Patent No. 7,593,374; "Br." means Motorola's opening brief, Dkt. No. 17; "Oppn." means WiNet's opposition brief, Dkt. No. 22.

### A. WiNet Asserts That Its Claim Is Based on a Legal Impossibility, Thereby Dooming Its Claim

WiNet's infringement theory is even worse than Motorola realized. WiNet clarifies that its Complaint should be read to mean that the software itself—not the running of the software on the end user's smartphone—is the infringing instrumentality. (*E.g.*, Oppn. at 9.) For example, it says "WiNet alleges that the software—not the device, not the end user—performs the method steps." (*Id.*)[2] If so, then neither Motorola, nor the end users of its smartphones, nor anyone else infringes.

By way of analogy, consider a restaurant's patent for a sandwich-making method and a publisher's cookbook that contains a sandwich recipe that supposedly runs afoul of the patent. For the reasons explained in Motorola's opening brief, the cookbook publisher does not infringe the restaurant's patent by selling or otherwise distributing the recipe, as method claims are infringed only when someone actually performs them. (*See* Br. at 4–5.) And, for reasons explained previously, while a home cook may be liable as a direct infringer when he performs the recipe in the cookbook, the publisher is not a direct infringer because it is not the one making the sandwich. (*See id.* at 6–10.)

Applied to this scenario, WiNet's argument says that the recipe itself—not the home cook—makes the sandwich and, because the publisher owns the recipe, the publisher is liable. This is plainly absurd: sandwiches do not appear out of thin air when a recipe is brought into the kitchen; a cook needs to implement the method with a knife and other tools.

WiNet's argument in this case is absurd for the same reason: the claimed steps—like "emitting pings" and "broadcasting a tag" (*see* '374 patent at Claim 1)—do not occur through the

---

[2] *See also, e.g.,* Oppn. at 2 ("WiNet accuses the Motorola software 'Mobile Hotspot' of performing each step of the patent claims. WiNet does not accuse Motorola phones of infringement."); *id.* at 9 ("WiNet accuses the software, not phones."); *id.* at 10 ("WiNet alleges in the Complaint that Motorola's software practices each step of the '374 patent's method.").

2

mere existence of software on the end user's smartphone; the phone's hardware needs to actually follow and implement the instructions on that software. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) (explaining relationship between software and hardware).

Because "WiNet alleges that the software—not the device, not the end user—performs the method steps" (Oppn. at 9), dismissal is mandatory. As a matter of law, software alone can never infringe a method claim: "software is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions" and that hardware performance—"the actual carrying out of the instructions"—is required to infringe a method claim. *Ricoh*, 550 F.3d at 1335. Since WiNet accuses software in isolation, this case should be dismissed. And because there is no way to allege infringement by software in isolation, the dismissal should be with prejudice.

### B. Motorola's End Users' Use of Software Cannot Make Motorola a Direct Infringer of WiNet's Method Claims

Even ignoring these case-ending admissions in WiNet's brief, and instead construing WiNet's theory as directed at ***smartphones executing*** the steps embodied within the software, dismissal still is warranted for the reasons presented in Motorola's opening brief. As explained below, WiNet has not and cannot rebut Motorola's argument given the unequivocal caselaw.

#### 1. Motorola is not a direct infringer merely because its end users use Motorola's software

WiNet repeatedly emphasizes that the accused software instructs the performance of each and every step of the method claim (Oppn. at 3–6), but this misses the point. As noted previously, given the posture of this motion, Motorola pretends that is so (even though it is false). (*See* Br. at 1.) The relevant question is this: even assuming the software contains instructions to perform every step of the claimed method, which person—the software's manufacturer or the software's end

3

user—is the direct infringer liable when a smartphone executes that software? It must be some person (natural or legal) because people, not machines, infringe patents. *See* 35 U.S.C. § 271(a), (h).

As explained in Motorola's opening brief, the Federal Circuit has held that the end user is the direct infringer. (Br. at 8–10.) Judge Rogers of the Northern District of California concisely summarized the relevant law:

> Devices do not use a method for purposes of patent infringement—people do. Accordingly, **the use of a method by a device creates liability for the party that controls the device, not its seller**. . . . Under *Ricoh*, software represents instructions for executing a process—not the process itself. Thus, "practicing [a] step via software instructions" does not state claim for direct infringement unless [defendant] actually operates the accused products that execute the software."

*Sentius Int'l, LLC v. Apple Inc.,* No. 4:20-CV-00477-YGR, 2020 WL 2850286, at *4 (N.D. Cal. June 2, 2020)[3]; *see also Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1220 (Fed. Cir. 2014). Thus, even if Motorola developed and distributed the smartphone software to the end users, the end users—not Motorola—are the direct infringers because Motorola does not operate the smartphones after it sells them to the end users.

WiNet points to *SiRF Technology* (Oppn. at 7–9), but that decision is inapplicable for reasons previously explained (*see* Br. at 9–10). Namely, that case gains potential relevance only when some steps of the method claim are performed by hardware controlled by the manufacturer (*e.g.*, a satellite) in addition to a step performed on an end user's device (*e.g.*, a GPS chip in a navigation device). (*See* Br. at 9–10 (discussing *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1329–31 (Fed. Cir. 2010)).) WiNet does not allege that Motorola performs some step of the method claim using a Motorola-controlled satellite or other device remote from the smartphone.

---

[3] All emphasis added unless otherwise noted.

(*See* Compl. ¶¶ 10–21.) Quite the opposite, it repeatedly emphasizes that the software on the smartphone directs every one of the claimed steps. (Oppn. at 3–6.)

In *Ericsson*, the Federal Circuit explained the limited holding of *SiRF*. The plaintiff in *Ericsson* made a similar argument as WiNet here: it asserted that the defendant was the direct infringer under *SiRF* because "[defendant] designs the accused products to perform the method steps automatically whenever the products are used." *Ericsson,* 773 F.3d at 1220. The *Ericsson* court rejected this argument, and it said that *SiRF* does not stand for the proposition that a manufacturer is liable for the steps performed by its device after the device is sold to end users— even when those steps are performed automatically (without user input). *Id*. at 1222. Liability under *SiRF* is not possible when "**all of the steps** of a method . . . are performed on the end product, which is **controlled by a third party** [end user]." *Id*. Instead, *SiRF* has potential relevance only when some of the method steps are "performed by equipment controlled by [the manufacturer]." *Id*. Thus, *Ericsson* makes clear that *SiRF* does not impose liability on manufacturers merely because end user devices execute software developed by the manufacturer.

Trying to distinguish it, WiNet appears to characterize *Ericsson* as addressing only liability from **selling** software. (*See* Oppn. 9.) But *Ericsson* goes further. It finds no manufacturer liability from the **use** of the software by an end user's device. 773 F.3d at 1222. Specifically, where "an end user product . . . **performs the entire method**," the party that sold the product to the end user is not liable. *Id*. The dispositive inquiry under *Ericsson* is control over the device: "if the accused infringer controls the equipment (or the user) that performs any claimed step, it may be liable for direct infringement, but **if the end user controls the device that performs the entire method, no direct infringement can be found**." *Sentius*, 2020 WL 2850286, at *4 (discussing *Ericsson*).

5

Here, WiNet asserts that the software residing on the end user's smartphones is responsible for each and every step. (*E.g.*, Oppn. 4; Compl. ¶ 12 ("The 'Mobile Hotspot' service on the Motorola smartphone is comprised of software, and this service performs each step of the Claim 1 method.").)[4] So, as in *Ericsson* and unlike *SiRF*, there are no steps performed by some other hardware controlled by Motorola (like the defendant's satellite in *SiRF*). Motorola raised this issue in its opening brief (Br. at 9–10), yet WiNet offers no response (*see* Oppn. at 7–10). There is no viable rebuttal: *SiRF* is irrelevant to this case, and *Ericsson* controls.

### 2. Motorola's alleged ownership and licensing of the software to end users does not convert Motorola into a direct infringer

WiNet's infringement theory is based on a made-up rule. According to WiNet (at least through a generous interpretation that bypasses the case-ending admissions discussed in Section I.A), if an end user's smartphone implements a patented method when it executes software, the manufacturer is liable as a direct infringer as long as it retains ownership of the software (*i.e.*, when the end user's rights stem from a license, rather than a sale, of the software):

> To repeat, WiNet accuses the Motorola software that Motorola owns. Motorola owns the accused software and licenses the software to the end user. WiNet alleges in the Complaint that Motorola's software practices each step of the '374 patent's method.
>
> * * *
>
> The existence of the license is the necessary allegation. Motorola owns the accused software. Motorola licenses that software.

(Oppn. at 9–10.)

Which statute, case, or treatise does WiNet cite to support this concept? None. The brief is totally void of any justification for this fabricated rule. (*See* Oppn. 1–11.)

---

[4] For reasons explained in its opening brief, WiNet has not and cannot allege that Motorola controls end users or their devices. (Br. at 6–8.) WiNet acknowledges that its infringement theory is not based on such control. (Oppn. at 11 ("There is no issue of whether Motorola does or does not have control of the user.").)

6

And, as Motorola explained previously with citations to *Akamai*, *Deep9*, and *Centillion*, even if Motorola retains ownership of software used by an end user under a license, that does not mean that Motorola ***performed*** the claimed method steps (or is liable for their performance), which is the necessary act of infringement. (Br. at 6, 8.) While WiNet points to supposed differences between the facts of those cases and this case (*e.g.*, claiming that this case involves no user action even though *Deep9* involves a user "downloading") (Oppn. at 10–11), nothing about WiNet's assertion challenges the conclusion to be drawn from those citations and from common sense: an end user's use of a manufacturer's software under a license does not make the manufacturer liable for such use merely because the manufacturer retained ownership of the software.

To conclude otherwise would eviscerate tenets of patent law. For example, in situations where infringement is divided—*e.g.*, where the manufacturer performs all steps except one, and the end user performs the remaining step—the user's actions can be attributed to the manufacturer only when the end user is contractually required to perform the step (or through a similarly onerous showing). *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022–23 (Fed. Cir. 2015). Yet, under WiNet's theory, in a case like this where not just one or two—but all—steps are performed on the end users' devices, those steps could be attributed to the manufacturer by a mere showing of a license agreement granting ***permission*** to use the software rather than a contract ***requiring*** the end user to use it.

Consequently, WiNet's theory is unsupported and illogical, so its case should be dismissed. Because WiNet's infringement theory relies on this impossibility, the dismissal should be with prejudice.

### C. Motorola is not Responsible for Steps Executed on Third-Party Laptops and, Thus, Cannot Infringe any Claims

WiNet's admissions also doom its case on the issue of third-party laptops. As discussed above, WiNet asserts that all steps are performed by smartphones running the "Hotspot Service" software (again, under a generous reading that avoids the issues raised in Section I.A). (Oppn. at 3–6.) It then concludes that the user's laptops are irrelevant (notwithstanding the contrary allegations in the complaint, *see* Compl. ¶¶ 11, 12, 16). (Oppn. at 11.)

But the asserted patent ***requires*** a second device to perform some of the steps. (*See* Br. at 10–12.) As discussed previously, the patent requires "a plurality of nodes" ('374 patent at claim 1),[5] and it explains that a node is some combination of hardware and software that is connected to, or embedded in, an electronic device. (*Id*. at 2:17–35, Fig. 13.) Thus, because the patent requires steps taken by at least two devices, WiNet must allege steps taken by at least two devices.

But, according to WiNet's interpretation of its Complaint, it only alleges actions by the smartphone (occurring at the direction of the Motorola "Hotspot Service" software), which defeats its claim for relief in view of the patent's two-device requirement. Alternatively, according to a plain reading of its Complaint, WiNet did attempt to allege actions by the Motorola smartphone and some unidentified, third-party end-user's laptop (made by some fourth-party manufacturer), but it has no means under patent law to hold Motorola responsible for steps taken by the laptop, which also dooms its complaint. (*See* Br. at 10–12.) Either way, this case should be dismissed. And, because there is no way to alter the fact that the patent requires two devices, and there is no way to impart liability on Motorola for the actions of an unrelated laptop, dismissal should be with prejudice.

---

[5] In the context of patent law, "plurality" means at least two (unless there is some specific reason to interpret it to mean even more than two). *Dayco Prod., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327–28 (Fed. Cir. 2001).

### D. WiNet's Cursory Factual Allegations Fail to Put Motorola on Notice of the Products Accused of Infringement

As discussed in Motorola's opening brief, WiNet does not identify any smartphone sold by Motorola—not by name, model number, or other specific descriptor—that supposedly incorporates the allegedly infringing software. This defect alone warrants dismissal, as it fails to give Motorola fair notice of the accused instrumentality. (Br. at 12–13.)

WiNet tries to bypass these issues by reiterating its argument that its accusations are directed to software alone, not smartphones. (Oppn. at 11.) This is fatal to its complaint for reasons explained above. (*See* Section I.A.) But, if the Court opts to ignore these case-ending admissions in WiNet's brief, and instead construes WiNet's theory as directed at smartphones ***executing*** the steps embodied within the software, WiNet failed to identify those smartphones. (*See* Br. at 12–13.)

### IV. CONCLUSION

For the reasons explained above and in Motorola's opening brief, WiNet has not and cannot allege a viable claim of infringement against Motorola as a matter of law, so Motorola respectfully asks this Court to dismiss the complaint in its entirety with prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile.").

9

Dated: July 13, 2020            Respectfully submitted,

                              */s/ Stephen M. Hankins*
Stephen M. Hankins
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
t: 415-275-8550
f: 415-275-8551
shankins@rshc-law.com

Louis A. Klapp
Michael H. Fleck
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
t: 312-471-8700
f: 312-471-8701
lklapp@rshc-law.com
mfleck@rshc-law.com

*Attorneys for Defendant*
*MOTOROLA MOBILITY LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 13, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

                                                                      /s/ Stephen M. Hankins