**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WINET LABS LLC, <br><br> Plaintiff, <br><br> v. <br><br> MOTOROLA MOBILITY LLC, <br><br> Defendant. | Case No. 1:20-cv-01094 <br><br> Honorable Harry D. Leinenweber |

**MOTOROLA MOBILITY LLC'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR AN ORDER DECLARING THIS CASE EXCEPTIONAL AND
ADOPTING LOCAL RULE 54.3 PROCEDURES**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARDS ....................................................................................................... 2

III. BACKGROUND .................................................................................................................. 3

    A. WiNet's Litigation Campaign Asserting Its Expired Patent .................................... 3

    B. WiNet's Case Against Motorola, Motorola's Warning to WiNet, and this Court's Dismissal with Prejudice ........................................................................................ 4

IV. ARGUMENT ....................................................................................................................... 5

    A. The Legal Component of WiNet's Case was Objectively Unreasonable and Frivolous ................................................................................................................. 6

    B. The Factual Component of WiNet's Case was Objectively Unreasonable and Frivolous ................................................................................................................. 9

    C. The Motivation Behind WiNet's Case was Improper ........................................... 12

    D. The Totality of the Circumstances Make this Case Exceptional .......................... 14

V. REQUEST FOR FEES AND RELATED PROCEDURES ............................................... 15

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AdjustaCam, LLC v. Newegg, Inc.*,
 626 F. App'x 987 (Fed. Cir. 2015) ................................................................................... 3

*Blackbird Tech. LLC v. Health In Motion LLC*,
 944 F.3d 910 (Fed. Cir. 2019) ........................................................................................ 13

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) ........................................................................................ 7

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
 876 F.3d 1372 (Fed. Cir. 2017) ........................................................................................ 8

*Joy Techs., Inc. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) .............................................................................................. 7

*Kimble v. Marvel Ent., LLC*,
 576 U.S. 446 (2015) ........................................................................................................ 13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 572 U.S. 545 (2014) ........................................................................................... 2, 3, 5, 14

*Ormco Corp. v. Align Tech., Inc.*,
 463 F.3d 1299 (Fed. Cir. 2006) ........................................................................................ 7

*Phonometrics, Inc. v. Econ. Inns of Am.*,
 349 F.3d 1356 (Fed. Cir. 2003) ........................................................................................ 9

*Ricoh Co. v. Quanta Computer Inc.*,
 550 F.3d 1325 (Fed. Cir 2008) ......................................................................................... 7

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*,
 858 F.3d 1383 (Fed. Cir. 2017) ...................................................................................... 12

*See Eon-Net LP v. Flagstar Bancorp.*,
 653 F.3d 1314 (Fed. Cir. 2011) ...................................................................................... 13

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
 726 F.3d 1306 (Fed. Cir. 2013) ...................................................................................... 12

*Vazquez v. Mason Manor Condo. Ass'n*,
 No. 1:17-CV-05645, 2018 WL 3036971 (N.D. Ill. June 19, 2018). ............................... 13

*WiNet Labs LLC v. Apple Inc.*,
 No. 5:19-CV-02248-EJD, 2020 WL 409012 (N.D. Cal. Jan. 24, 2020) ....................... 4, 8

**Statutes**

35 U.S.C. § 285 .................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 54 ............................................................................................................... 15
L.R. 54.3 ............................................................................................................................ 15

I.      INTRODUCTION

WiNet should pay Motorola's attorneys' fees because WiNet brought an exceptionally bad case.[1] A patent case is "exceptional" under 35 U.S.C. § 285 when it stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated. WiNet's case was both extraordinarily weak—under the governing law *and* the facts—and brought with the improper motive to extract a nuisance-value settlement.

When the Court granted Motorola's motion to dismiss this case with prejudice, the Court found that WiNet's case was based on a legal impossibility. That alone warrants a finding that this is an exceptional case, but there is much more because WiNet was fully aware of this deficiency. For example, WiNet knew of the Federal Circuit cases that this Court relied upon in dismissing its meritless case because Apple Inc. and another district court had relied upon them in dismissing an earlier-filed WiNet litigation against Apple. Indeed, before WiNet served the Complaint on Motorola, Motorola raised these same cases in correspondence to WiNet to explain that WiNet's case was frivolous. WiNet willfully ignored this caselaw and wasted Motorola's money (and the Court's resources) by moving forward with this action.

Furthermore, WiNet ignored or misstated facts that would have doomed its case even if its legal theory had merit. WiNet's patent required actions by two devices, which WiNet identified as an end user's Motorola-brand smartphone and an end user's laptop. But WiNet knew or should have known that Motorola does not make or sell laptops, so it could not have any connection to the end user's laptop that might impart liability on Motorola. Any reasonable prefiling investigation would have uncovered this. Additionally, WiNet relied on a supposed "End User

---

[1] "WiNet" means Plaintiff WiNet Labs LLC; "Motorola" means Defendant Motorola Mobility LLC; and "the '374 patent" means U.S. Patent No. 7,593,374.

1

License Agreement" between Motorola and users of its smartphones to support its infringement theory, but no such agreement exists. It appears WiNet blindly recycled its complaint from its earlier case against Apple, which (unlike Motorola) sells laptops and has an end user license agreement. While WiNet undoubtedly reduced its own attorneys' fees by failing to properly investigate or ignoring these facts, WiNet wasted Motorola's money by forcing it to defend against this baseless lawsuit.

Finally, WiNet's motivation was unseemly. Given the extreme weakness of this case, WiNet could not have expected to prevail on the merits. Instead, as evidenced by its low-dollar settlement offer and the surrounding circumstances, WiNet's goal was to extract a nuisance-value settlement from Motorola. That is improper, and it too makes this case exceptional.

## II.   LEGAL STANDARDS

The Patent Act empowers district courts to award reasonable attorneys' fees to the prevailing party "in exceptional cases." 35 U.S.C. § 285. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

In *Octane Fitness*, the Supreme Court significantly lowered the bar for finding a case exceptional. Under the Federal Circuit's previous standard, a case was exceptional only if the district court found litigation-related misconduct of an independently sanctionable magnitude or determined that the litigation was both brought in subjective bad faith and objectively baseless. *Octane Fitness*, 572 U.S. at 554. Rejecting this rigid approach, the *Octane Fitness* standard encompasses a broader set of cases. *See id*.; *see also AdjustaCam, LLC v. Newegg, Inc.,* 626 F.

App'x 987, 990–91 (Fed. Cir. 2015) ("[T]the Supreme Court did not simply relax the standard under § 285. It substantially changed the analysis. . . [and] lowered the burden of proof for establishing that a case is 'exceptional.'").

Although there is no precise rule or formula for determining whether a case is exceptional—a district court should exercise its discretion considering the totality of the circumstances—*Octane Fitness* noted that one or more of the following non-exclusive factors may be relevant: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6.

## III. BACKGROUND

### A. WiNet's Litigation Campaign Asserting Its Expired Patent

The asserted U.S. Patent No. 7,593,374 expired on September 22, 2017, because the owner of record—a Chinese company called M-Labs Ltd.—opted not to pay the $1,800 fee necessary to keep the patent alive. (Ex. 1; Ex. 2 at 3.)[2] WiNet Labs LLC—the plaintiff in this case—apparently was formed with the sole purpose of acquiring the expired patent from M-Labs Ltd. and asserting it against smartphone manufacturers. In particular, WiNet incorporated in Wyoming on March 26, 2019 (Ex. 4), it allegedly purchased the patent (Dkt. 1 ¶ 8),[3] and it started suing smartphone manufacturers four weeks later (Ex. 5).

WiNet initially sued Apple on April 25, 2019, in the Northern District of California and Samsung on May 5, 2019, in the Southern District of New York. (Exs. 5, 6.) Samsung and WiNet

---

[2] Exhibit citations refer to the exhibits attached to the Declaration of Louis A. Klapp filed herewith.

[3] Although WiNet claims ownership of the patent in the Complaint, the U.S. Patent and Trademark Office does not recognize it as the owner. According to the USPTO's assignment database, Beijing-based M-Labs Ltd. still owns the patent. (Ex. 3.)

3

filed a Stipulation of Voluntary Dismissal three months later. (Ex. 6.) In response to Apple's motion to dismiss, Judge Davila dismissed WiNet's case against Apple with leave to amend on January 24, 2020. *WiNet Labs LLC v. Apple Inc.*, No. 5:19-CV-02248-EJD, 2020 WL 409012 (N.D. Cal. Jan. 24, 2020). WiNet filed an amended complaint against Apple (Ex. 7), but WiNet voluntarily dismissed its case on March 26, 2020, before any additional briefing. (Ex. 5.)

On February 14, 2020—after Judge Davila granted Apple's motion to dismiss—WiNet sued Motorola and LG in the Northern District of Illinois. (*See* Dkt. 1; Dkt. 1, *WiNet v. LG Elecs.*, No. 1:20-cv-01096 (N.D. Ill. Feb 14, 2020).) No substantive activity has occurred in the LG case (which is before Judge Rowland) because the parties filed a series of joint requests to extend LG's deadline to answer, including because WiNet and LG have been working to "finalize documents that will resolve this case." (Ex. 8.)

### B. WiNet's Case Against Motorola, Motorola's Warning to WiNet, and this Court's Dismissal with Prejudice

After filing its Complaint against Motorola, WiNet's counsel, Matthew Wawrzyn, wrote a letter to a Motorola executive, Rudi Kalil, attaching the complaint. (Ex. 9.) Mr. Wawrzyn falsely told Mr. Kalil (a non-lawyer) that the letter constituted service of the complaint. (*Id.*) He also offered Motorola a "license" to the patent, an impossibility given that the patent was expired (a fact that Mr. Wawrzyn did not disclose). (*Id.*) Mr. Wawrzyn set the price at $150,000, which he said was the amount "a competitor of Motorola" had paid for the "license." (*Id.*) Mr. Wawrzyn explained that Motorola could avoid the cost of litigation by paying this sum now. (*Id.*)

In response, Motorola's counsel admonished Mr. Wawrzyn for his false statement about service, explained why WiNet's Complaint was fatally flawed, and warned that Motorola would pursue its attorneys' fees if WiNet did not voluntarily dismiss the action before serving the Complaint. (Ex. 10.)

4

After another round of correspondence where Motorola again explained the baselessness of WiNet's case and repeated its warning about the consequences of pursuing a frivolous case (Ex. 11; Ex. 12), WiNet nonetheless served Motorola on May 6, 2020. (Klapp. Decl. ¶ 2.) On May 27, Motorola moved to dismiss this case based on the same caselaw that Motorola had identified and explained in its letters to WiNet. (Dkt. 17; Exs. 10, 12.)

On August 4, 2020, this Court dismissed WiNet's complaint with prejudice. (Dkt. 25.) The Court relied on the same cases cited in Motorola's brief and Motorola's correspondence with WiNet. (*Id*.; Dkt. 17; Exs. 10, 12.) Specifically, the Court found that WiNet's infringement theory was based on a legal impossibility:

> WiNet alleges that "the software—not the device, not the end user—performs the method steps," and infringes the Patent. But people, not machines, infringe patents. . . . "The actual carrying out of the instructions," or hardware performance, is required to infringe a method claim. WiNet argues that the software alone infringes the method claim, a legal impossibility. This alone requires dismissal of WiNet's claim.

(Dkt. 25 at 4–5 (citations and modification marks in original omitted).) Given the fundamental flaws in WiNet's theory, the Court held that amendment would be "futile," and it dismissed the Complaint with prejudice. (*Id*. at 6.)

IV. **ARGUMENT**

The nonexclusive factors relevant to § 285 suggested by the Supreme Court in *Octane Fitness* are relevant here, including at least frivolousness, objective unreasonableness (both in the factual and legal components of the case), and motivation. 572 U.S. at 554 n.6. Motorola need only demonstrate that this case is exceptional by a preponderance of the evidence, *id*. at 557, but the facts presented here exceed that standard.

5

### A. The Legal Component of WiNet's Case was Objectively Unreasonable and Frivolous

As this Court found in dismissing WiNet's Complaint with prejudice, WiNet's infringement theory relied on a legal theory that had been thoroughly and repeatedly rejected by the Federal Circuit, which alone makes this case exceptional. But WiNet's conduct is even worse, because this is not a case where the plaintiff merely failed to conduct the requisite legal diligence before initiating the lawsuit. WiNet willfully ignored a previous court order bringing the key Federal Circuit decisions to WiNet's attention, and it willfully ignored two warning letters from Motorola explaining the baselessness of WiNet's allegations under those decisions. As explained further below, WiNet's conduct makes this case exceptional.

As the Court noted in its Order dismissing the Complaint, the asserted '374 patent contains 20 claims, each of which "involves a method, rather than an apparatus or system claim." (Dkt. 25 at 2.) WiNet alleges that Motorola infringes the patent through software on its smartphones. (*Id*.; Dkt. 1 ¶ 10.) Specifically, Motorola allegedly infringes when it "makes, uses, and sells its 'Mobile Hotspot' service," which is "software" on a "Motorola smartphone." (Dkt. 25 at 2; Dkt. 1 ¶¶ 10, 12.) Although Motorola sells its smartphones (including software) to end users, the software on the phones is allegedly "within the possession, custody, and control of Motorola," not Motorola's end users, because Motorola allegedly retains ownership of the software under an alleged "End User License Agreement." (Dkt. 1 ¶ 10; *see also* Dkt. 25 at 2, 5.) WiNet explained its legal theory this way: "WiNet alleges that the software—not the device, not the end user—performs the method steps." (Dkt. 22 at 9.)

This infringement theory—that software alone can infringe a method claim—is frivolous, but at minimum objectively baseless. As the Court already found, WiNet's position was a "legal

6

impossibility" that was so fundamentally flawed that it compelled dismissal with prejudice. (Dkt. 25 at 4–5.) The Federal Circuit had clearly articulated that software alone cannot infringe:

> "[S]oftware is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions." *Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008). "[T]he actual carrying out of the instructions," or hardware performance, is required to infringe a method claim. *Id*.

(Dkt. 25 at 4–5.)

WiNet's theory was clearly and unquestionably wrong. The Federal Circuit repeatedly has rejected the idea that an electronics manufacturer could be liable as a direct infringer of a method claim after the sale of its devices to end users merely because the manufacturer was the source of the software that directed the allegedly infringing process:

- *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) ("[N]one of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method.")
- *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir 2008) ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a).")
- *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.")
- *C.f. Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed. Cir. 1993) ("The sale of [an item capable of performing a process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed.")

Even worse, WiNet was fully aware of the above-mentioned decisions before it initiated this lawsuit. Weeks before it filed its complaint against Motorola, the Northern District of California specifically discussed the *Ericsson* line of cases in dismissing WiNet's complaint against Apple:

> Defendant cannot be liable for selling devices that are, or distributing software that is, merely "capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 & n.12 (Fed. Cir. 2006) ("Method claims are only infringed when the

7

> claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014) ("Because the asserted claim is a method claim, however, the accused devices must also *actually perform* that method.").

*WiNet v. Apple*, 2020 WL 409012, at *3 (emphasis in original).[4]

Furthermore, after WiNet filed this case, Motorola's counsel wrote WiNet's counsel explaining why WiNet's case was frivolous with reference to this same line of cases:

> **The Federal Circuit has held, repeatedly, that merely selling a device capable of performing a method claim is not an act of infringement**. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) ("none of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method"); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)"); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use") . . . . **Thus, WiNet's infringement allegations are without merit**.

(Ex. 10 (emphasis added).)

WiNet's willful disregard for binding caselaw that prohibited WiNet's legal theory makes this case exceptional. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379–80 (Fed. Cir. 2017). There, the Federal Circuit affirmed an award of attorneys' fees where the patentee ignored the Supreme Court's *Alice* decision, which plainly showed that its patent was invalid. *Id*. *Inventor Holdings* held that "[i]t was [patentee's] responsibility to reassess its case in

---

[4] The *WiNet v. Apple* decision, although well-supported in many regards, misreads *Ericsson* such that it places undue emphasis on whether any claim steps "occur automatically" or whether "some sort of user engagement [is] required." 2020 WL 409012, at *4. For reasons other courts have explained, *Ericsson* prevents manufacturer direct-infringer liability even when the end user's device automatically performs the accused process. *See Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-CV-00477-YGR, 2020 WL 2850286, at *4 & *4 n.3 (N.D. Cal. June 2, 2020) (explaining error in *WiNet v. Apple*). But the misreading is immaterial to this motion, as the *Apple v. WiNet* decision fully informed WiNet of the nonviability of the case it would ultimately bring against Motorola. Here, WiNet relied on a theory that software alone can infringe, which *Ericsson*, *Ormco*, and *Ricoh*—all cited in *Apple v. WiNet*—clearly reject.

8

view of new controlling law." *Id.* at 1379. Because there were "obvious issues with the [asserted] claims that [patentee] should have recognized post-*Alice*," the district court did not err in awarding fees under § 285. *Id.* at 1380. *See also Phonometrics, Inc. v. Econ. Inns of Am.*, 349 F.3d 1356, 1362 (Fed. Cir. 2003) (in Rule 11 context, holding that, regardless of initial merits of plaintiff's case, it was improper for plaintiff to continue asserting case after Federal Circuit issued decision that prohibited plaintiff's infringement theory).

Like *Inventor Holdings*, WiNet ignored binding precedent showing that its legal theory was wrong and persisted in asserting a baseless claim. Thus, like those cases, this case is exceptional under § 285, and Motorola should be awarded its fees.

### B. The Factual Component of WiNet's Case was Objectively Unreasonable and Frivolous

Beyond asserting a legal impossibility, WiNet also asserted factual impossibilities. First, although the patent claims required at least two separate devices to perform actions, WiNet did not and could not plead that Motorola had any connection to a device other than a smartphone. Second, WiNet relied on a so called "End User License Agreement" to establish Motorola's alleged "ownership" of the hotspot software on the end user's device, but WiNet had no basis to claim that any such document existed. As explained further below, WiNet's conduct makes this case exceptional.

#### 1. WiNet did not and could not plead all requisite elements

As noted in Motorola's briefing on the motion to dismiss—although not reached by the Court in its Order dismissing the Complaint—Motorola cannot possibly infringe under WiNet's infringement theory because that theory requires steps by an end user's laptop, and Motorola does not make or sell laptops. (Dkt. 17 at 10.) Specifically, the asserted patent's claims involve two "nodes," and the claims require both nodes to take actions such as "emitting pings" and

9

"broadcasting a tag." (*Id*.; *see also* '374 patent at claim 1.) WiNet accuses the Motorola smartphones as having the first node, and it accuses unidentified "laptops" as having the second node: "The Motorola smartphone ***and the laptop computer*** include 'nodes,' which allow these devices to send and receive data among other devices." (Dkt. 1 ¶ 12; *see also, e.g., id*. ¶¶ 11, 16.)

Although its theory depended on it, WiNet did not allege that Motorola makes, sells, or otherwise has any connection whatsoever to the end user's laptop computer. (*See* Dkt. 1 ¶¶ 7–21.) Nor could WiNet allege such facts because Motorola is in the business of making and selling smartphones, not laptops. (Ex. 13.) Any basic prefiling investigation would reveal this fact, as Motorola's website confirms that Motorola does not make or sell laptop computers. (*See id*.)

Ignoring the facts, WiNet thoughtlessly regurgitated allegations from its earlier lawsuit against Apple. There, WiNet accused three different types of Apple products, including both an Apple smartphone (iPhone) and an Apple laptop (MacBook Air), whereas against Motorola WiNet accused a Motorola smartphone and a *generic* laptop:

| **Allegation against Apple** | **Allegation against Motorola** |
|---|---|
| For example, the "Personal Hotspot" service on an iPhone forms an ad-hoc network among the iPhone and an iPad and a MacBook Air. | For example, the "Mobile Hotspot" service on a Motorola smartphone and a laptop computer could form an ad-hoc network. |

(Ex. 7 ¶ 9a (emphasis added); Dkt. 1 ¶ 11 (emphasis added).).)

After WiNet swapped in "Motorola smartphone" for "iPhone," it plainly realized that Motorola lacked a laptop to swap in for "MacBook Air" because it did not accuse a ***Motorola*** laptop. (Dkt. 1 ¶ 11.) Yet, rather than accepting that WiNet could not assert its infringement theory against Motorola, it persisted in bringing its baseless case.

    **2.**    **WiNet baselessly plead an "End User License Agreement"**

But WiNet did not merely fail to plead necessary facts; WiNet affirmatively plead allegations that it should have known were false. WiNet asserted that, "According to the End User

10

License Agreement, Motorola owns and controls the 'Mobile Hotspot' service and associated software . . . ." (Dkt. 1 ¶ 10.) WiNet explained that this allegation was critical to its infringement theory: "The existence of the license is the necessary allegation. Motorola owns the accused software. Motorola licenses that software." (Dkt. 22 at 10.)

Despite the supposed importance of this allegation, WiNet apparently undertook no effort to investigate its truth or outright ignored its inaccuracy. Tellingly, the Complaint does not attach the alleged "End User License Agreement," quote from it, describe where it can be found, or provide any other information about it. (Dkt. 1 ¶ 10.) This is because WiNet had no basis to claim that such a document existed. For example, the publicly-available user manuals for Motorola's smartphones indicate that the legal terms governing the smartphone can be found at a particular website, and the cited website contains no "End User License Agreement." (Exs. 14–16.)

Instead of basing this "necessary allegation" on a reasonable factual investigation, WiNet again blindly reused the language from its earlier lawsuit against Apple. The relevant allegation in this case uses almost identical language as the earlier allegation against Apple, as shown below:

| Allegation against Apple | Allegation against Motorola |
|---|---|
| According to the Licensed Application End User License Agreement, Apple owns and controls the "Personal Hotspot" service and associated software, granting a license to the software to the Apple device user. | According to the End User License Agreement, Motorola owns and controls the "Mobile Hotspot" service and associated software, granting a license to the software to the Motorola device user. |

(Ex. 7 ¶ 9 (emphasis added); Dkt. 1 ¶ 10 (emphasis added).)

Unlike the fabricated "End User License Agreement" referenced in the Motorola Complaint, Apple apparently has a "Licensed Application End User License Agreement" which asserts that Apple maintains ownership of certain software applications. (Ex. 17 ("Apps made available through the App Store are licensed, not sold, to you.").)

11

### 3. The factual weaknesses in WiNet's theory make this case exceptional

WiNet may have saved itself attorney fees by thoughtlessly recycling its Apple complaint when suing Motorola, but it was plainly improper. As noted above, a basic investigation of publicly-available documents would have shown that the allegation—and, thus WiNet's infringement theory—was inapplicable to Motorola.

WiNet's pursuit of this case despite knowing that important facts were false, or failing to conduct a reasonable prefiling investigation that would have shown them to be false, alone warrants an exceptional case finding. *See Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*, 858 F.3d 1383, 1388 (Fed. Cir. 2017); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327–1328 (Fed. Cir. 2013). For example, in *Taurus*, the Federal Circuit affirmed an award of attorneys' fees (even under the pre-*Octane Fitness* standard) where the patentee pursued an infringement theory that ignored the language of the patent itself, which showed that the theory lacked support. 726 F.3d at 1328, 1329. In *Rothschild*, the Federal Circuit reversed a denial of attorneys' fees under § 285 where the patentee failed to adequately consider known prior art that plainly showed its patent was invalid and, thus, that it could not maintain an infringement action based on that patent. 858 F.3d at 1390.

Like *Rothschild* and *Taurus*, WiNet ignored case-dispositive facts that showed that its infringement theory was wrong and persisted in asserting a baseless claim. Thus, like those cases, this case is exceptional under § 285, and Motorola should be awarded its fees.

### C. The Motivation Behind WiNet's Case was Improper

WiNet's slipshod approach to this lawsuit is consistent with its improper motivation: WiNet wanted to extract a nuisance-value settlement payment. After filing the Complaint, WiNet wrote a letter a Motorola offering to settle the case for $150,000, which would allow Motorola to avoid the "cost and risk of litigation." (Ex. 9.)

12

WiNet's $150,000 demand was not based on any valuation of the merits of its case, but admittedly on the cost Motorola could expect to incur litigating the case until the Court disposed of it. (*Id*.) WiNet's strategy is consistent with a plaintiff who knows its patent's only "value" is in generating legal fees and, thus, extracting nuisance-value settlements from defendants.

The circumstances around WiNet's settlement letter emphasize its impropriety. Mr. Wawrzyn, WiNet's counsel, sent the letter via Federal Express to Rudi Kalil, Motorola's Vice President & General Manager, North America. (*Id*.) The letter stated that, by attaching the summons and complaint, it constituted service "pursuant to Rule 4(h)(l) of the Federal Rules of Civil Procedure." (*Id*.) While every lawyer—including Mr. Wawrzyn—should know that mailing a summons is not a proper means of service, Mr. Kalil was not a lawyer. (*See* Ex. 18.)[5] WiNet's misrepresentation apparently sought to create a false sense of urgency to act on the demand.

Further, WiNet stated that the $150,000 payment would give Motorola a "license" to WiNet's patent. (Ex. 9.) This was false, as the patent had expired—a fact that WiNet did not disclose—so there was nothing to license. (*Id*.)[6] WiNet's misrepresentation apparently sought to create a false sense of the patent's value, suggesting that Motorola's continued operations were at risk without the "license," rather than a mere payment to resolve alleged past infringement.

WiNet's improper motivation to secure a nuisance-value settlement supports Motorola's request for fees. *See Eon-Net LP v. Flagstar Bancorp*., 653 F.3d 1314, 1328 (Fed. Cir. 2011); *Blackbird Tech. LLC v. Health In Motion LLC*, 944 F.3d 910, 915-17 (Fed. Cir. 2019). In *Eon-Net*—even under the more stringent pre-*Octane Fitness* standard—the Federal Circuit affirmed an exceptional case finding where the plaintiff filed "an objectively baseless infringement action" in

---

[5] *See Vazquez v. Mason Manor Condo. Ass'n*, No. 1:17-CV-05645, 2018 WL 3036971, at *2 (N.D. Ill. June 19, 2018).

[6] *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 449 (2015) (no royalties allowed for expired patent).

order "to extract a nuisance value settlement by exploiting the high cost imposed on [defendant] to defend against [plaintiff's] baseless claims." 653 F.3d at 1328. Similarly, *Blackbird* affirmed a fee award where "even a modicum of due diligence by [plaintiff], as part of a pre-suit investigation, would have revealed the weaknesses in its litigation position" and where plaintiff "made multiple settlement demands that were far less than the anticipated cost of defense, i.e., nuisance value settlement offers." 944 F.3d at 916.

Like *Eon-Net* and *Blackbird*, WiNet brought baseless claims with the intent to extract nuisance value settlement payments. Thus, like those cases, this case is exceptional under Section 285, and Motorola should be awarded its fees.

### D. The Totality of the Circumstances Make this Case Exceptional

This case is exceptional for ***each*** of the reasons above. Yet, the Section 285 inquiry considers "the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554. Taken together, WiNet's conduct clearly makes this case exceptional.

WiNet never had any chance of prevailing on the merits. It relied on a flawed legal theory even though multiple sources explained the flaws to WiNet, and it relied on inaccurate factual assumptions even though WiNet knew or should have known they were false. WiNet largely recycled its prior Apple complaint against Motorola without bothering to assess whether it had a case against Motorola.

WiNet did not care if it had a case against Motorola because winning on the merits was never the goal. The only value WiNet hoped to achieve was a nuisance-value settlement, and that is what it demanded. WiNet saw its patent as license to shakedown a non-infringing party simply because it would be cheaper for Motorola to settle than to litigate. That is exceptionally bad conduct, so Motorola is entitled to its attorneys' fees under 35 U.S.C. § 285.

14

## V. REQUEST FOR FEES AND RELATED PROCEDURES

The only remaining question is the amount to award. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), Motorola seeks to recover all fees expended in this action—including fees related to this attempt to collect fees—which it presently estimates will amount to around $75,000.

This District's local rules provide procedures for narrowing disputes over which fees are recoverable, although only when the Court "enter[s] an order with respect to the filing of a fee motion." *See* L.R. 54.3(b). Such an order can be entered after a party has filed a Rule 54 motion for fees. *Id*. Motorola believes that a L.R. 54.3(b) order would be appropriate here and requests that the Court order the parties to comply with the provisions of that rule. However, given that the default timeline uses "the date of judgment or settlement agreement upon which the motion is based" as the start date, Motorola respectfully requests that the start date be set to the date of the Court's order granting this Motion.

## IV. CONCLUSION

For the reasons stated above, Motorola respectfully asks the Court to issue an order (i) declaring that this is an exceptional case under 35 U.S.C. § 285 such that Motorola is entitled to recover its attorneys' fees and (ii) instructing the parties to comply with the procedures set forth in Local Rule 54.3 (with the relevant deadlines calculated from the date of the Court's order) to assist the Court in determining the amount of fees to award.

Dated: August 18, 2020 Respectfully submitted,

/s/ Louis A. Klapp
Stephen M. Hankins
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
t: 415-275-8550
f: 415-275-8551
shankins@rshc-law.com

Louis A. Klapp
Michael H. Fleck
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
t: 312-471-8700
f: 312-471-8701
lklapp@rshc-law.com
mfleck@rshc-law.com

*Attorneys for Defendant*
*MOTOROLA MOBILITY LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 18, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

                                                                            /s/ Louis A. Klapp