# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WINET LABS LLC, | |
|     Plaintiff, | |
|   v. | Case No. 1:20-cv-01094 |
| MOTOROLA MOBILITY LLC, | Honorable Harry D. Leinenweber |
|     Defendant. | |

**MOTOROLA MOBILITY LLC'S MEMORANDUM IN SUPPORT OF
ITS SECOND MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL POSTURE ....................................................................................2

III. FACTUAL BACKGROUND ..................................................................................3

IV. LEGAL STANDARDS ...........................................................................................5

V. ARGUMENT ...........................................................................................................7

    A. WiNet Lacks Standing Because the '374 Patent Was Never Transferred Back to the Inventors. ................................................................................................. 8

        1. WiNet Must Identify a Written Assignment or a Law that Transferred the '374 Patent Back to the Inventors. .........................................................8

        2. As a Matter of Fact, the Inventors Assigned *All* Their Rights in the '374 Patent to the BVI Entity, and the BVI Entity Never Executed an Assignment Transferring Rights Back to the Inventors. ..............................9

        3. No Law Effectuated a Transfer of the '374 Patent to the Inventors; Instead, When the BVI Entity Dissolved, the '374 Patent Transferred to the BVI Government. ................................................................................10

        4. WiNet's Reversionary Right Theory is Baseless. ......................................11

        5. The Inventors' 2019 Assignment Did Not Transfer Any Rights to WiNet. ..........................................................................................................11

    B. Even if the 2019 Assignment Was Effective In Transferring *Certain* Rights, the 2019 Assignment Does Not Grant WiNet the Rights It Needs to Establish Standing. .............................................................................................................. 12

VI. THE COURT SHOULD REENTER ITS DISMISSAL WITH PREJUDICE PURSUANT TO RULE 12(b)(6) ..........................................................................13

VII. CONCLUSION ......................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*A123 Sys., Inc. v. Hydro-Quebec*,
  626 F.3d 1213 (Fed. Cir. 2010)..................................................................................................11

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010)..................................................................................................13

*Akazawa v. Link New Tech. Int'l, Inc.*,
  520 F.3d 1354 (Fed. Cir. 2008)..............................................................................................8, 11

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ...................................................................................................5, 6

*Arachnid, Inc. v. Merit Indus., Inc.*,
  939 F.2d 1574 (Fed. Cir. 1991)..................................................................................................12

*Bank of Guam v. U.S.*,
  578 F.3d 1318 (Fed. Cir. 2009)..................................................................................................14

*Bazile v. Finance Sys. of Green Bay, Inc.*,
  983 F.3d 274 (7th Cir. 2020) ..................................................................................................6, 7

*Comm'ns. Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020)....................................................................................................6

*Daiichi Sankyo, Inc. v. Apotex, Inc.*,
  No. 030937, 2009 WL 1437815 (D. N.J. May 19, 2009) ..........................................................14

*Enzo APA & Son, Inc. v. Geapag A.G.*,
  134 F.3d 1090 (Fed. Cir. 1998)....................................................................................................8

*FilmTec Corp. v. Allied-Signal, Inc.*,
  939 F.2d 1568 (Fed. Cir. 1991)..................................................................................................12

*Hoffman-La Roche Inc. v. Teva Pharm. USA*,
  No. 09-5283 (ES), 2011 WL 6028583 (D. N.J. Dec. 2, 2011) ..................................................12

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996)....................................................................................................13

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007)....................................................................................................7

Case: 1:20-cv-01094 Document #: 46 Filed: 06/23/21 Page 4 of 20 PageID #:467

*RAD Data Comms., Inc. v. Patton Elecs. Co.*,
   882 F. Supp. 351 (S.D.N.Y. 1995) ..................................................................................12

*TheBrain Techs. LP v. AnyLogic N. Am., LLC*,
   No. 17-cv-6574, 2019 WL 1013995 (N.D. Ill. Mar. 4, 2019) ...................................................8

**STATUTES**

35 U.S.C. § 261..................................................................................................................8

35 U.S.C. § 271(a) ...........................................................................................................13

35 U.S.C. § 281................................................................................................................13

35 U.S.C. § 286................................................................................................................13

**RULES**

Fed. R. Civ. P. 12(b)(1)..............................................................................................6, 14

Fed. R. Civ. P. 12(b)(6)......................................................................................2, 13, 14

I.      **INTRODUCTION**

This action is currently dismissed with prejudice because WiNet asserted a liability theory that was both legally and factually impossible.[1] On appeal, the Federal Circuit deferred review of that dismissal, recognizing "grave doubt" about WiNet's ownership of the '374 patent and, thus, WiNet's standing to bring this action and the courts' jurisdiction to hear it. Now, WiNet confirms the Federal Circuit's grave doubt by failing to present any facts or law showing that WiNet acquired the patent from the patent's previous owner.

In short, WiNet relies on a chain of title that is broken. According to WiNet, it acquired the '374 patent through the following process: (1) the inventors of the patent assigned the patent to a British Virgin Islands company via a 2005 written assignment contract; (2) upon the dissolution of the British Virgin Islands company, the inventors purportedly regained ownership of the patent via a supposed "reversionary right" in the patent; and (3) the inventors purportedly assigned the patent to Plaintiff WiNet Labs LLC, a Wyoming company, via a 2019 written assignment contract.

WiNet's standing claim fails because the second step never happened, so WiNet never achieved ownership in the third step. Federal Circuit law is clear: ownership rights in a patent cannot transfer without a written instrument or operation of law. WiNet has neither to show that the patent ever transferred back to the inventors. WiNet lacks standing to assert a patent it does not own, so this Court lacks subject matter jurisdiction.

Plus, WiNet lacks standing for an independent reason. Even if WiNet somehow acquired ownership of the patent, it did not acquire the right to sue for past damages. Because the patent is

---

[1] "WiNet" means Plaintiff WiNet Labs LLC; "Motorola" means Defendant Motorola Mobility LLC; and "the '374 patent" means U.S. Patent No. 7,593,374.

1

expired, only past conduct matters here, yet WiNet lacks the right to sue for that conduct. For these reasons, this Court should dismiss this matter for lack of standing and subject matter jurisdiction.[2]

**II.   PROCEDURAL POSTURE**

This Court previously dismissed Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) because WiNet's infringement theory was premised upon "a legal impossibility" and because, under WiNet's own allegations, "it [was] obvious" that Motorola was not performing the '374 patent's claimed method. (Dkt. 25 at 5–6.) Motorola then filed a motion seeking a declaration that the case was exceptional under 35 U.S.C. § 285 such that Motorola was entitled to recover its attorneys' fees (Dkt. 27, "motion for attorneys' fees").

During briefing on Motorola's motion for attorneys' fees, WiNet filed a patent assignment document (referred to herein as the "2019 Assignment") with this Court that had not previously been filed publicly (Dkt. 31–2). Motorola then argued that this case was exceptional for an additional reason: the 2019 Assignment revealed that WiNet did not have rights to assert the patent and therefore lacked Article III standing. (Dkt. 34.) On September 1, 2020, WiNet filed a notice of appeal seeking reversal of the Court's Order dismissing the case was prejudice, and this Court subsequently continued Motorola's motion for attorneys' fees pending resolution of WiNet's appeal. (Dkt. 30; Dkt. 35.)

On appeal, WiNet failed to identify the jurisdictional dispute in its opening brief's Statement of Jurisdiction. (CAFC-Dkts. 10, 12; Dkt. 36 at 4.) In response, Motorola contended that the Federal Circuit lacked jurisdiction for the same reasons raised in the motion for attorneys'

---

[2] There is no basis for the Court to revisit its dismissal of the action for failure to state a claim which is law of the case and should be re-entered as an alternative basis for dismissal in addition to the Court's dismissal for lack of standing and of jurisdiction, *see infra* pp. 13-14.

2

fees pending in this Court. (CAFC-Dkt. 13.) WiNet then disputed that contention, relying on the 2019 Assignment for its standing and the Court's jurisdiction. (CAFC-Dkt. 18 at 5-18.)

The Federal Circuit found that Motorola had presented "evidence that casts grave doubt on whether WiNet has any ownership interest in the patent," and that "WiNet has not set forth any facts, explanation, or analysis of law" indicating how the 2019 Assignment could have provided WiNet with any rights in the '374 patent. (Dkt. 36 at 5-6.) The Federal Circuit therefore remanded so that this Court "may address the Article III question." (*Id.* at 6.)

On remand, WiNet agreed to produce to Motorola in advance of this Motion "all documents related to past or current ownership of, or other rights in, the '374 patent; a written identification of all witnesses on whose testimony WiNet intends to rely to establish its standing to bring this action; and a declaration containing such testimony of each such witness." (Dkt. 40 at 3-4.)

Accordingly, on May 12, 2021, WiNet served an "Offer of Proof of Ownership of Patent-In-Suit," which consisted of three unsworn declarations, the USPTO's file history of the '374 patent, and an assignment executed by the inventors of the '374 patent in 2005 ("the Original Assignment") (collectively, the "Offer of Proof"). (Exs. 1-6.)[3] The '374 patent's file history contained the 2019 Assignment, which WiNet ultimately filed with the USPTO on September 1, 2020. (Ex. 5.)

### III.     FACTUAL BACKGROUND

In 2005, the inventors executed the Original Assignment and assigned away all their rights in the '374 patent to a British Virgin Islands ("BVI") corporation called M-Labs, Ltd, which later

---

[3] Exhibit citations refer to the exhibits attached to the Declaration of Louis A. Klapp filed herewith. Exhibits A-E of WiNet's Offer of Proof are attached to the Declaration of Louis A. Klapp as Exhibits 2-6, respectively. The three declarations consist of the Unsworn Declaration of Bob S.G. Chou ("the Chou Decl."), the Unsworn Declaration of Joseph L. Pratt ("Pratt Decl."), and the Unsworn Declaration of Lyntern Kee ("Kee Decl.").

changed its name to WiNet Labs *Ltd*. ("the BVI Entity," which is a different entity than Plaintiff WiNet Labs *LLC*).[4] (Ex. 6; Chou Decl. at ¶ 2-3.) The Original Assignment explicitly stated that each inventor gave up his entire interest in the patent:

> I . . . hereby sell, assign, transfer and set over unto said ASSIGNEE [M-Labs, Ltd.], its successors and assigns, my entire right, title and interest in and to said inventions and all improvements thereon, in and to said applications for Letters Patent thereon.

(Ex. 6 at 1.) The Original Assignment did not provide any means for the inventors to regain ownership of the patent. (Ex. 6 at 1–2.)

The BVI Entity sought to commercialize the invention claimed in the '374 patent. (Chou Decl. at ¶ 5.) But the BVI Entity was unsuccessful, so its owners decided to suspend operations and stop paying the annual fees that were necessary to maintain the BVI Entity's existence under BVI law. (Chou Decl. at ¶¶ 5-6; Pratt Decl. at ¶ 5; Kee Decl. at ¶¶ 4–5.) After the BVI Entity "defaulted in payment of its 2008 annual fee," it was "struck of the register" in 2009. (Ex. 7, Certification from BVI Registrar of Corporate Affairs.) Taking no action and remaining "continually struck for 7 years," the BVI Entity dissolved on April 30, 2016. (*Id.*; *see also* Chou Decl. at ¶¶ 5-6; Pratt Decl. at ¶¶ 5–8.) The next year, on September 22, 2017, the '374 patent expired because no one paid the $1,800 fee necessary to keep the patent alive. (Ex. 8, Patent Office Fee Record; Ex. 9, Patent Office Table of Fees.)

Prior to dissolution, the BVI Entity took no actions to dispose of its assets, including the '374 patent. (*See* Ex. 1; Chou Decl. at ¶ 6–8; Pratt Decl. at ¶¶ 5, 11–12; Kee Decl. at ¶ 6.)

---

[4] Although both Plaintiff WiNet and WiNet Labs Ltd. both contained "WiNet" in their names, WiNet Labs Ltd. should not be confused with Plaintiff WiNet Labs, LLC, as WiNet Labs Ltd. was a company based in Beijing and organized in the British Virgin Islands (Ex. 6; Chou Decl. at ¶¶ 2-6; Pratt Decl. at ¶ 2-4), whereas the Plaintiff is a Wyoming company (Dkt. 1 ¶ 1; Dkt. 28-5; Chou Decl. ¶ 7; Pratt Decl. at ¶ 11; Kee Decl. at ¶ 6.).

Specifically, it did not enter into any written agreements transferring ownership of the '374 patent. (*See id*.)

In 2019—several years after the BVI Entity dissolved and the '374 patent expired—the BVI Entity's former owners rekindled their desire to assert the '374 patent. (Chou Decl. at ¶ 7; Pratt Decl. at ¶¶ 9-10; Kee Decl. at ¶ 6.) But, the BVI Entity dissolved while it still owned the '374 patent and, as admitted by the BVI Entity's former CEO, the BVI Entity "could no longer be revived." (Chou Decl. at ¶¶ 6-7.)

On March 26, 2019, the owners formed a new company in Wyoming: Plaintiff WiNet Labs, LLC. (Chou Decl. ¶ 7; Pratt Decl. at ¶ 11; Kee Decl. at ¶ 6; Dkt. 28-5.)

A few days later, the *inventors* of the '374 patent executed the 2019 Assignment in which they claimed ownership of the '374 patent and purportedly transferred that ownership to WiNet. (Ex. 5.) The inventors' ownership claim was expressed through a declaration stating, "we now hold a reversionary right in" the '374 patent." (*Id*.) Mr. Chou, Mr. Pratt, and Mr. Kee assert that the inventors "might have" had reversionary interests when they executed the 2019 Assignment. (Chou Decl. at ¶ 8 (the inventors "assigned any reversionary interests they might have in the '374 patent . . . ."); Pratt Decl. at ¶ 12 (same); Kee Decl. at ¶ 6 (same).)

However, as the Federal Circuit found, the Original Assignment does not specify that the inventors retained any rights in the '374 patent (reversionary or otherwise). (Ex. 6; Dkt. 36 at 6 ("But the 2005 assignment on its face says nothing about any reversion to the inventors.").)

## IV. LEGAL STANDARDS

"Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "In essence the

5

question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Id.* (internal quotation marks omitted).

"The procedure employed by the district court to make jurisdictional determinations is a procedural question not unique to patent law, and thus is governed by the law of the regional circuit." *Comm'ns. Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1365 (Fed. Cir. 2020) (internal quotation marks omitted). The 7th Circuit permits standing to be challenged under Rule 12(b)(1). *Apex Digital*, 572 F.3d at 444-45.

Under Rule 12(b)(1), the party challenging jurisdiction may launch a "factual attack" in which the challenging party presents evidence outside the pleadings that shows that the plaintiff lacks standing. *Id.* at 444. Because standing is jurisdictional, the court must be satisfied that the plaintiff has standing in order to be satisfied that it has the power to hear the case. *Id.* Therefore, when the challenging party launches a factual attack on the plaintiff's standing, "no presumptive truthfulness attaches to plaintiff's allegations" in its complaint, and "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal quotation marks omitted). When presented with conflicting evidence, the court must resolve disputed material facts. *See id.*; *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (any doubt in plaintiff's standing obligates the court to "conduct whatever supplementary factual proceedings are necessary to resolve the doubt") (internal quotation marks omitted).

At all times, however, "the plaintiff bears the burden of establishing standing." *Apex Digital*, 572 F.3d at 443. The plaintiff must demonstrate "by a preponderance of the evidence, or

6

proof to a reasonable probability, that standing exists." *Bazile*, 983 F.3d at 278 (internal quotation marks omitted).

## V. ARGUMENT

Although the ultimate question is whether WiNet owns the '374 patent, the fundamental issue is whether the people who supposedly assigned the patent to WiNet in 2019—the patent's inventors—owned the patent at the time they executed that assignment. They did not. Instead, they transferred away all their rights in the patent to the BVI Entity fourteen years earlier, and they never reacquired those rights. Thus, because the inventors lacked ownership of the patent when they executed the 2019 assignment to WiNet, the chain of title is broken, and WiNet never acquired any rights.

WiNet alleges that the inventors re-acquired the patent from the BVI Entity through a "reversionary right," but no facts or law support the existence of such right. The Federal Circuit requires a written instrument to assign rights, and none exists here. The only remaining path for ownership transfer would be the operation of law, but WiNet has not and cannot identify any law that would have transferred ownership of the patent back to the inventors. Without the right to exclude others from practicing the patent—namely, ownership of the patent—WiNet lacks standing and this Court lacks subject matter jurisdiction. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1336, 1342 (Fed. Cir. 2007).

Furthermore, even if the 2019 Assignment was effective in transferring certain rights to WiNet (it was not), it did not grant WiNet the right to sue for past damages, which is the only claim WiNet can bring here due to the patent's expiration. Lacking such right, WiNet lacks standing for this additional reason.

### A. WiNet Lacks Standing Because the '374 Patent Was Never Transferred Back to the Inventors.

#### 1. WiNet Must Identify a Written Assignment or a Law that Transferred the '374 Patent Back to the Inventors.

A plaintiff can show it has sufficient rights to confer standing to sue for patent infringement in one of two ways. *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1356 (Fed. Cir. 2008). The plaintiff may produce an assignment, which must be a written instrument through which all substantial rights in the patent were transferred to the plaintiff. *Id.*; *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *see* 35 U.S.C. § 261 (patent assignments must be in "an instrument in writing"). Or, without an assignment, the plaintiff must demonstrate that it acquired title to the patent through the operation of law—typically state or foreign law. *See Akazawa*, 520 F.3d at 1357-58 (remanding for a determination as to whether Japanese intestacy laws transferred ownership in a patent to the plaintiff); *TheBrain Techs. LP v. AnyLogic N. Am., LLC*, No. 17-cv-6574, 2019 WL 1013995, at *3 (N.D. Ill. Mar. 4, 2019) (finding that the plaintiff did not acquire title to a patent through operation of the California Corporation Code following dissolution of third-party company).

WiNet's claim to standing is based on the inventors supposedly owning the '374 patent when they executed the 2019 Assignment. (Ex. 1; CAFC-Dkt. 18 at 5-18 (arguing that rights in the patent flowed (1) from the inventors to the BVI Entity; (2) then from the BVI Entity back to the inventors; and (3) finally from the inventors to WiNet).) As explained further below, no written instrument or operation of law transferred ownership of the patent from the BVI Entity to the inventors. So, the inventors could not have transferred any rights to WiNet via the 2019 Assignment. With zero rights in the '374 patent, WiNet lacks standing, and this Court lacks jurisdiction.

8

>    **2.    As a Matter of Fact, the Inventors Assigned _All_ Their Rights in the '374 Patent to the BVI Entity, and the BVI Entity Never Executed an Assignment Transferring Rights Back to the Inventors.**

WiNet does not—and cannot—point to any assignment transferring rights from the BVI entity back to the inventors, so there is a *factual* break in the chain of title relied upon by WiNet.

On May 1, 2005, all inventors of the '374 patent executed the Original Assignment in which they transferred **_all_** their rights in the '374 patent to the BVI Entity. (Ex. 6; Chou Decl. at ¶ 2-3.) The Original Assignment left the inventors with no rights whatsoever in the '374 patent. (Ex. 6 (assigning away their "entire right, title and interest" in the '374 patent).)

Then the BVI Entity dissolved without ever transferring the '374 patent back to the inventors. (Chou Decl. at ¶ 5-6 ("WiNet Labs Ltd., at the end of its corporate existence, owned one asset, the '374 patent . . . ."); Pratt Decl. at ¶¶ 4, 8; Ex. 7, Certification from BVI Registrar of Corporate Affairs). Moreover, as admitted by the BVI Entity's former president in his declaration, by the time 2019 came along, the BVI Entity "could no longer be revived" (Chou Decl. at ¶ 7), so it would have been impossible for the BVI entity to have executed an assignment transferring the '374 patent back to the inventors (Chou Decl. at ¶¶ 7-8; Pratt Decl. at ¶¶ 9-11; Kee Decl. at ¶ 6.).

Indeed, the BVI Entity was prohibited from transferring the '374 patent as early as May 1, 2009. According to the BVI Business Companies Act, once a company has been "struck off," "the company and the directors, members and any liquidator or receiver thereof, may not . . . in any way deal with the assets of the company" or "act in any way with respect to the affairs of the company." (Ex. 10, BVI Business Companies Act § 215(1)(a), (c).) Here, the BVI Entity stopped paying its annual fees, causing the BVI Entity "to be 'struck off' as a corporate entity" on May 1, 2009, and was thereafter incapable of transferring the '374 patent back to the inventors. (Chou Decl. at ¶ 6; Ex. 7, Certification from BVI Registrar of Corporate Affairs).

9

Thus, the Original Assignment is the only agreement addressing the inventors' rights in the patent, and it establishes that the inventors gave away all of their rights and retained nothing. (Ex. 6 (assigning "their "***entire right, title and interest*** in and to said inventions [in the '374 patent] and all improvements thereon" in 2005).) For this reason, the Federal Circuit concluded that WiNet's reversionary right theory was insufficient to establish standing on appeal. (Dkt. 36 at 6.)

> 3. **No Law Effectuated a Transfer of the '374 Patent to the Inventors; Instead, When the BVI Entity Dissolved, the '374 Patent Transferred to the BVI Government.**

Having no written assignment transferring the '374 patent from the BVI Entity to the inventors, WiNet's only path to close the gap in the chain of title would be some law that caused the patent to transfer to the inventors. WiNet cannot establish this, as no such law exists. Instead, operative law widens the gap in the chain of title.

Upon the dissolution of the BVI Entity, the '374 patent apparently transferred to the BVI Government, which presumably continues to hold title to the '374 patent to this day. The BVI Business Companies Act establishes the framework for the creation and dissolution of corporate entities in the British Virgin Islands. (Ex. 10, BVI Business Companies Act, 2004.) Under BVI law, "any property that has not been disposed of at the date of the company's dissolution ***vests in the Crown***." (*Id*. § 220 (emphasis added).) WiNet does not and cannot explain why the BVI Entity is not covered by this law.

Here, the BVI Entity took no action to dispose of the '374 patent prior to the BVI Entity's dissolution. (Chou Decl. at ¶¶ 6-7; Pratt Decl. at ¶¶ 4-8; Kee Decl. at ¶¶ 3-5.) Therefore, pursuant to BVI law, as of the date of dissolution of the BVI Entity—April 30, 2016—title to the '374 patent apparently transferred to, and remains with, the BVI Government.

10

### 4. WiNet's Reversionary Right Theory is Baseless.

WiNet, however, suggests that rights in the '374 patent somehow reverted back to the inventors when WiNet ceased operations or dissolved. (Ex. 1 at ¶ 16; (Chou Decl. at ¶ 8; Pratt Decl. at ¶ 12; Kee Decl. at ¶ 6; CAFC-Dkt. 18 at 13 (The inventors "signed the 2019 assignment that describes the entire right, title and interest passing to Winet Labs Ltd. and then reverting to the five original owners when WiNet Labs Ltd. ceased operations.").) WiNet's "reversionary right" theory is baseless.

In prior briefing on the standing issue WiNet never identified the basis for the alleged "reversionary right" (CAFC-Dkt. 18 at 5-18), but to the extent such a right could exist (it does not), it must be based on a written assignment agreement or operation of law. *Akazawa*, 520 F.3d at 1356. As detailed above, neither exists.

WiNet's declarants provide only wishful thinking. Each one speculates that the inventors "***might have***" had reversionary interests when they executed the 2019 Assignment, but they set forth no factual or legal basis for their unfounded hope. (Chou Decl. at ¶ 8 (the inventors "assigned any reversionary interests they might have in the '374 patent . . . ."); Pratt Decl. at ¶ 12 (same); Kee Decl. at ¶ 6 (same).) Moreover, the inventors' bare assertion that they might have held a reversionary right in the '374 patent is insufficient as a matter of law to show that the inventors in fact held reversionary rights. "In determining ownership for purposes of standing, labels given by the parties do not control." *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010). WiNet's "reversionary right" theory is therefore frivolous.

### 5. The Inventors' 2019 Assignment Did Not Transfer Any Rights to WiNet.

Because the inventors never regained any rights in the '374 patent, the chain of title falls apart, and WiNet's lack of standing strips this Court of jurisdiction.

In particular, in the absence of any transfer of rights from the BVI Entity to the inventors, the inventors' Original Assignment is the only operative assignment here, and it renders the inventors' purported 2019 Assignment a nullity. A second assignment is a nullity where the original assignment previously conveyed all rights. *See FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (explaining that an assignment is a nullity if the assignor previously assigned its rights to another party); *Hoffman-La Roche Inc. v. Teva Pharm. USA*, No. 09-5283 (ES), 2011 WL 6028583, at *3-4 (D. N.J. Dec. 2, 2011) ("once an inventor assigns all rights and title to a claimed invention to an assignee, the inventor has nothing remaining to assign and any subsequent purported assignment is a nullity") (internal quotation marks omitted); *RAD Data Comms., Inc. v. Patton Elecs. Co.*, 882 F. Supp. 351, 353 (S.D.N.Y. 1995) (finding assignment of a patent to the plaintiff was a nullity where the assignor had previously assigned its rights to another entity). Therefore, in 2019, the inventors had no rights in the '374 patent, so the inventors' 2019 Assignment conveyed nothing to WiNet.

### B. Even if the 2019 Assignment Was Effective In Transferring *Certain* Rights, the 2019 Assignment Does Not Grant WiNet the Rights It Needs to Establish Standing.

Even if the 2019 Assignment was effective in transferring *certain rights*—which it is not—the assignment would not have granted WiNet the right to sue for past infringement—rights that were necessary to establish a case or controversy. "[O]ne seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the *legal title* to the patent *during the time of the infringement.*" *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (emphasis in original). Therefore, if the assignee of a patent does not acquire the right to sue for past infringement as part of the assignment, it will necessarily lack standing to

12

sue for past infringement. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010).

Here, the '374 patent expired on September 22, 2017 (Ex. 8), so when WiNet filed suit on February 14, 2020, the right to sue for past infringement was the only plausible basis for standing. 35 U.S.C. §§ 271(a), 281, 286. Yet, the 2019 Assignment on which WiNet relies does not contain an assignment of the right to sue for past infringement. (*See* Ex. 5.) Instead, it transferred the "right, title and interest in and to" the patent as of the 2019 Assignment's April 9, 2019, execution date. (*Id.*)

A bare reference to all "right, title, and interest" in the patent is insufficient to transfer the right to sue for past damages. An assignment of the right to sue for past infringement ***must be express***. *Abraxis*, 625 F.3d at (Fed. Cir. 2010) ("A party may sue for past infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so."). Thus, the 2019 Assignment did not transfer the right to sue for past infringement before that date—namely, for alleged infringement that occurred before the expiration of the patent on September 22, 2017 (Ex. 5.). *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("bare reference to all right, title, and interest does not normally transfer the right to sue for past infringement").

Consequently, WiNet lacks standing. There is no case or controversy and, thus, no jurisdiction in this action.

## VI. THE COURT SHOULD REENTER ITS DISMISSAL WITH PREJUDICE PURSUANT TO RULE 12(b)(6)

Regardless of how the Court rules on WiNet's standing, this case stands dismissed with prejudice. In addition to dismissing the action for want of standing, the Court should re-enter judgment on its prior Order (Dkt. No. 25) dismissing WiNet's complaint with prejudice for failure

13

to state a claim pursuant to Rule 12(b)(6). That Order remains undisturbed as the Federal Circuit's order remanded without reaching the merits of the Rule 12(b)(6) dismissal (Dkt. 36 at 6). *See Daiichi Sankyo, Inc. v. Apotex, Inc.*, No. 030937 (SDW-MCA), 2009 WL 1437815, at *7-8 (D. N.J. May 19, 2009) ("the law of the case controls prior decisions of this Court that were not addressed by the Federal Circuit").

Likewise, a finding of no-standing here does not undermine the prior Order, as it is appropriate for the court to find a lack of subject matter jurisdiction and, in the alternative, failure to state a claim, which streamlines this proceeding and any appeal. *See Bank of Guam v. U.S.*, 578 F.3d 1318, 1325-26 (Fed. Cir. 2009) (reviewing both the district court's grant of plaintiff's 12(b)(1) and 12(b)(6) motions).

The Court should thus re-enter the original order dismissing the action for all the reasons set forth in Motorola's Motion to Dismiss (Dkt. No. 16), its Memorandum in Support of Its Motion to Dismiss (Dkt. No. 17), and its Reply in Support of Its Motion to Dismiss (Dkt. No. 24).

## VII. CONCLUSION

For the reasons stated above, Motorola respectfully asks the Court to issue an order dismissing WiNet's Complaint pursuant to Rule 12(b)(1) for lack or standing in addition to its prior dismissal with prejudice pursuant to Rule 12(b)(6).

Dated: June 23, 2021

Respectfully submitted,

/s/ Louis A. Klapp
Stephen M. Hankins
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
t: 415-275-8550
f: 415-275-8551
shankins@rshc-law.com

14

Louis A. Klapp
Michael H. Fleck
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
t: 312-471-8700
f: 312-471-8701
lklapp@rshc-law.com
mfleck@rshc-law.com

*Attorneys for Defendant*
*MOTOROLA MOBILITY LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 23, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

                                                                                         */s/ Louis A. Klapp*