UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------x

WINET LABS LLC,

    Plaintiff,

        v.

MOTOROLA MOBILITY LLC,

    Defendant.

-------------------------------------------------------x

Case No. 1:20-cv-01094

Honorable Harry D. Leinenweber

## RESPONSE TO MOTION TO DISMISS BY WINET LABS LLC

Matthew M. Wawrzyn (ARDC#6276135)
matt@wawrzynlaw.com
WAWRZYN LLC
200 Randolph Street, Suite 5100
Chicago, IL 60601
(312) 235.3120 (telephone)
(312) 233.0063 (facsimile)

*Counsel for WiNet Labs LLC*

**TABLE OF CONTENTS**

**Introduction**……………………………………………………………………………………1

**Background** ……………………………………………………………………………………3

*WiNet's Ownership of the '374 Patent* ………………………………………………………….3

*Procedural Posture* …………………………………………………………………………...6

**Argument** …………………………………………………………………………………….7

*Standard of Review* ……………………………………………………………………………7

I.      WINET OWNED THE '374 PATENT WHEN WINET FILED THE COMPLAINT BECAUSE THE 2005 ASSIGNMENT EXPRESSES AN INTENT FOR LEGAL TITLE TO REVERT TO THE INVENTORS. ………………………………………7

II.     WINET OWNED THE '374 PATENT WHEN WINET FILED THE COMPLAINT BECAUSE THE 2005 ASSIGNMENT SHOULD BE REFORMED TO EXPRESS AN INTENT FOR LEGAL TITLE TO REVERT TO THE INVENTORS ……….12

III.    THE COURT SHOULD DISMISS THIS CASE WITHOUT PREJUDICE IF THE COURT DECLINES TO ENFORCE OR REFORM THE 2005 ASSIGNMENT ..13

**Conclusion**…………………………………………………………………………………..15

Exhibit A, BVI Business Companies Act 2004 ……………………………………..[attached]

## **TABLE OF AUTHORITIES**

**Cases**

*Capitol Leasing Co. v. F.D.I.C.*,
    999 F.2d 188 (7th Cir.1993)……………………………………………………………..7

*Carey v. U.S.*,
    326 F.2d 975 (U.S. Ct. Cl. 1964)……………………………………………………..10

*Grafon Corp. v. Hausermann*,
    602 F.2d 781 (7th Cir.1979)…………………………………………………………..7

*Kahn v. General Motors Corp.*,
    77 F.3d 457 (Fed. Cir. 1996)………………………………………………..9, 10, 11

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019)……………..…………………………………………...6

*MAO-MSO Recovery II, LLC v. State Farm Mutual*,
    935 F.3d 573 (7th Cir. 2019)………………………………………………...…6, 14

*Minco, Inc. v. Combustion Engineering, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996)…………………………………………………………..11

*Minn–Chem, Inc. v. Agrium, Inc.*,
    683 F.3d 845 (7th Cir. 2012)…………………………………………………………….7

*Modern Space Design & Decoration (Shanghai) Co., Ltd. v. Lynch*,
    2014 WL 48973221 (N.D. Ill. Sept. 29, 2014)………………………………………….12

*Phosphorus, Ltd. v. Angus Chem. Co.*,
    322 F.3d 942 (7th Cir. 2003)…………………………………………………………….7

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020)………………………………………………………13

*Sessions v. Romadka*,
    145 U.S. 29 (1892)……………………………………………………………10, 11

*State Contracting & Engineering Corp. v. Condotte America, Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003) …………………………………………………..12

*WiNet Labs LLC v. Motorola Mobility LLC*,
    2021 WL 1343535 (Fed. Cir. April 12, 2021)……………………………………..……..6

*Zannini v. Reliance Ins. Co. of Ill., Inc.*,
    147 Ill.2d 437, 449 (1992)……………………………………………………………..12

**Rules**

Fed. R. Civ. P. 12(b)(1)……………………………………………………………………………7

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………………1

Fed. R. Civ. P. 44.1……………………………………………………………………………..7

**Foreign Law**

BVI Business Companies Act 2004…………………………………………………….8, 13, 14

**INTRODUCTION**

The Court dismissed WiNet Labs LLC's complaint against Motorola Mobility LLC with prejudice pursuant to Rule 12(b)(6).

After the dismissal, Motorola argued that WiNet had lacked Article III standing to file the complaint and the Federal Circuit vacated the judgment dismissing this case with prejudice and remanded for a determination by this Court whether WiNet possessed Article III standing to file the complaint.

The unrebutted evidence establishes that a small group of professionals have since its inception and to the present owned and controlled the patent-in-suit, the '374 patent. Two gentlemen, Bob Chou and Lin Zhang (and three of Zhang's university students), are the named inventors on the '374 patent.

Chou, Zhang, and Joseph Pratt formed a company organized under the laws of the British Virgin Islands (the "BVI Entity"), which Lyntern Kee joined about a year later.[1] Since 2006, the BVI Entity and Plaintiff WiNet have had the identical equity ownership consisting of Chou, Zhang, Pratt, and Kee.

The BVI Entity's sole asset was the '374 patent and a related international application. The BVI Entity's purpose was to commercialize the patent rights. When this objective proved unsuccessful, the owners of the BVI Entity decided to allow the corporate charter to lapse.

The BVI Entity had no creditors. There is no entity or person—other than Chou, Zhang,

---

[1] M-Labs changed its name to WiNet Labs Ltd. in 2009. (Doc. 46-2 (Offer of Proof) ¶ 11.) For clarity, this brief adopts the definition used in the Motorola brief. WiNet Labs Ltd., formerly known as M-Labs Ltd., is referred to in this brief as the "BVI Entity."

Pratt, and Kee, and the three former university students—who may claim to own the '374 patent. This record expresses an intent from all owners or potential owners of the '374 patent—Chou, Zhang, Pratt, and Kee, and the three former university students—that the '374 patent is owned by WiNet.

The 2005 assignment of the '374 patent from the inventors to the BVI Entity includes a covenant of the inventors to take all lawful acts to secure the grant of the '374 patent and perfect and secure title in the BVI Entity. WiNet requests that the Court enforce this covenant and hold that the inventors' covenant evinces an intent to accept a reversionary interest in the '374 patent in 2009 when the BVI Entity ceased operations without creditors.

Alternatively, if the Court declines to enforce the 2005 inventors' covenant as a matter of law, WiNet requests that this Court use its equitable jurisdiction to enforce the intent of the parties. In hindsight, the BVI Entity should have executed a written assignment to the inventors ***before*** the BVI Entity was stricken from the BVI corporate roll in 2009. According to BVI law, the BVI Entity, after being stricken, was without capacity to execute the assignment back to the inventors. The record before this Court shows that the owners of the BVI Entity have always intended to maintain their interest in the '374 patent and that the inventors have always intended for legal title to the '374 patent to be held by the BVI Entity or a successor.

Based on this intent—and without any other potential claimed ownership to the '374 patent by a third party—WiNet requests that the Court reform the 2005 assignment from the inventors to the BVI Entity, giving effect to the parties' intent that legal title should revert to the inventors if the BVI Entity is stricken from the BVI corporate rolls with no creditors.

Motorola produces no evidence to support its assertion that title to the '374 patent has

vested in the Crown under BVI law. Assuming for the sake of argument that the Crown owns the '374 patent, BVI law would protect WiNet's right to restore the BVI entity and return the '374 patent to the BVI Entity free and clear of all claims or liens. The BVI Entity would assign the '374 patent to WiNet.

If the Court declines to enforce the 2005 assignment's covenant of the inventors to perform all lawful acts or to exercise its equitable powers and holds instead that title vested in the Crown, then WiNet requests that the Court dismiss this case without prejudice according to Seventh Circuit precedent.

## BACKGROUND

*WiNet's Ownership of the '374 Patent*

In response to Motorola's challenge to WiNet's Article III standing, on May 12, 2021, WiNet produced evidence that WiNet asserts would support an order finding that WiNet owned the '374 patent as of the filing of the complaint against Motorola. WiNet titled this document and attachments "Offer of Proof of Ownership of Patent-in-Suit" (the "Offer of Proof"). Motorola submitted the Offer of Proof with its second motion to dismiss. (Doc. 46 (Motorola Mem.) at 3 n.3.)

The inventors of the '374 patent's methods are Bob Chou, Lin Zhang, and Zhang's university students. (Doc. 46-2 (Offer of Proof) ¶ 5.)

Joseph L. Pratt is a year 2000 graduate of Northwestern University Law School. (Doc. 46-2 (Offer of Proof) ¶ 6.) In 2004, Pratt was practicing corporate law in China. (*Id.* ¶ 7.) In 2005, Pratt, Chou, and Lin Zhang founded a company called M-Labs Ltd., the predecessor company to the BVI Entity. (*Id.* ¶ 8.)

The purpose of the BVI Entity was to commercialize the inventions taught in the application that would mature into the '374 patent. (Doc. 46-2 (Offer of Proof) ¶ 8.) Throughout its existence—from 2005 to 2009—the BVI Entity owned the application that would become the '374 patent and a related international PCT. (*Id.*)

A gentleman named Lyntern Kee became an owner of the BVI Entity in 2006. From 2006 to the present, the ownership of the BVI Entity and WiNet has been Messrs. Chou, Lin Zhang, Pratt, and Kee. (Doc. 46-2 (Offer of Proof) ¶ 9.) The inventors, the original owners of the rights in the '374 patent, are Bob Chou, the CEO of the BVI Entity (Doc. 46-2 (Chou Decl.) ¶ 2) and Lin Zhang and his three university students. (Doc. 46-2 (Pratt Decl.) ¶ 4.)

The 2005 assignment from the inventors to the BVI Entity is of the inventors "entire right, title and interest" in the '374 patent. (Doc. 46-7 (2005 Assignment) at 3.)[2] In the 2005 assignment, the inventors "further covenant and agree that I will communicate to [the BVI Entity], its successors, legal representatives and assigns, any facts known to me respecting said invention, and at the request of [the BVI Entity] execute any and all . . . other papers and documents, and testify in any legal proceeding, and make rightful oaths, and generally do all other and further lawful acts that [the BVI Entity] may deem necessary or desirable to obtain and enforce [the '374 patent], to secure the grant of such Letters Patent and to perfect and vest in [the BVI Entity] the entire right, title and interest in the inventions, applications and Letters Patent." (*Id.*)

The BVI Entity decided in 2009 to cease operations based on an inability to commercialize the application that would become the '374 patent. (Doc. 46-2 (Offer of Proof) ¶ 9.)

---

2   Cites to the ECF use pagination assigned by ECF.

Mr. Pratt provided legal advice to the BVI Entity from 2009 to 2019. (Doc. 46-2 (Offer of Proof) ¶ 14.) In consultation with BVI counsel, Mr. Pratt advised the BVI Entity that the BVI Entity could restore its corporate charter by paying back fees and penalties. (*Id.*)

Based on this ability to restore the BVI Entity, the owners of the BVI Entity have always intended to maintain their interest in the '374 patent. (Doc. 46-3 (Chou Decl.) ¶ 6 ("[The BVI Entity] understood that for a number of years it could revive its corporate existence and the owners of [the BVI Entity] intended to maintain their interest in the '374 patent."); Doc. 46-4 (Pratt Decl.) ¶ 5; Doc. 46-5 (Kee Decl.) ¶¶ 5, 6.)

To confirm the intent of the BVI Entity's owners to maintain their interest in the '374 patent, the inventors acknowledged that title to the '374 patent had reverted to the inventors when the BVI Entity ceased operations. (Dkt. 46-6 (2019 Assignment) at 2.) "[W]e had originally sold and assigned to [the BVI Entity] . . . our entire, right, title and interest in [the '374 patent] . . . but because [the BVI Entity] ceased operations the ownership of [the '374 patent] . . . has now reverted to us." (*Id.*)

The assignment from the inventors to WiNet included the right to enforce the patent: "AND I HEREBY further covenant and agree that I will . . . testify in any legal proceeding and make rightful oaths, and generally do all other and further lawful acts that said ASSIGNEE [WiNet] may deem necessary or desirable to obtain and enforce Letters Patent of said invention, to secure the grant of such Letters Patent and to perfect and vest in the ASSIGNEE the entire right, title and interest in the inventions, applications and Letters Patent." (Dkt. 46-6 (2019 Assignment) at 2.)

The BVI Entity had no creditors. (Doc. 46-2 (Offer of Proof) ¶ 17.)

*Procedural Posture*

The Court dismissed the complaint with prejudice. (Dkt No. 25 (Order).) Motorola then moved for attorneys' fees and asserted that the 2019 Assignment from the inventors to WiNet was ineffective and WiNet lacked Article III standing. (Dkt. No. 34.)

WiNet appealed the order dismissing this action with prejudice. The Federal Circuit vacated the Court's judgment and remanded for a determination whether WiNet has Article III standing based on the 2019 Assignment. *WiNet Labs LLC v. Motorola Mobility LLC*, No. 2020-2235, 2021 WL 1343535 (Fed. Cir. April 12, 2021).

The court of appeals held that the question on remand was whether WiNet had or has Article III standing, a constitutional question of subject matter jurisdiction, and not a statutory question of whether WiNet may seek relief under the patent laws. *Id.* at *2 n.1 (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019)).

"Without deciding whether we could ourselves resolve the question, we vacate the judgment and remand so that the district court may address the Article III question. Motorola did not present the issue or relevant facts to that court before the dismissal on the merits. A remand will enable the district court to address WiNet's Article III standing in the first instance, using any appropriate procedures."

The court of appeals expressed no view on whether the general rule that a dismissal for lack of Article III is without prejudice. *Id.* at *3 (citing, *e.g.*, *MAO-MSO Recovery II, LLC v. State Farm Mutual.*, 935 F.3d 573, 581 (7th Cir. 2019)).

## **ARGUMENT**

*Standard of Review*

With respect to a motion under Rule 12(b)(1), the court in *County of Cook v. HSBC N. Am. Holding, Inc.*, 136 F. Supp. 3d 952, 957-958 (N.D. Ill. 2015) held the standard of review to be as follows: "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979)). "[I]f the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by *Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir.2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *Id.*

Rule 44.1 of the Federal Rules of Civil Procedure provides, "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." WiNet requests that the Court construe a written instrument and determine the parties' intent, in the context of BVI law—the BVI Business Companies Act 2004. (*See infra* at 8.)

**I.  WINET OWNED THE '374 PATENT WHEN WINET FILED THE COMPLAINT BECAUSE THE 2005 ASSIGNMENT EXPRESSES AN INTENT FOR LEGAL TITLE TO REVERT TO THE INVENTORS.**

A group of seven individuals have always owned or made covenants fulfilling the promise to vest the ownership of the '374 patent. The inventors conveyed the '374 patent to the BVI Entity and promised to take all legal acts to secure legal title in the BVI Entity. The owners of the BVI Entity intended to retain their legal title after the BVI Entity ceased operations in 2009. The inventors confirmed their 2005 intent to take all lawful acts to vest legal title in the BVI Entity when in 2019, the inventors executed an assignment where the inventors acknowledge that the legal title had reverted to the inventors, who assigned the legal title back to the equity holders of the BVI Entity—now WiNet. Accepting this reversion of legal title was a lawful act under BVI law, because the BVI Entity had no creditors.

When the BVI Entity declined to renew its charter for a period of seven years, the BVI Entity dissolved as of April 30, 2016. (Doc. 46-7 (BVI Registrar).)

The BVI Entity was governed by the British Virgin Islands Business Companies Act, 2004 (the "Act"), relevant provisions of which are attached to the Declaration of Matthew Michael Wawrzyn, attached hereto as "<u>Exhibit A</u>." Section 220(1) of the Act provides in part, "any property of a company that has not been disposed of at the date of the company's dissolution vests in the Crown." (Ex. A at ACT008.)

The BVI Entity intended to dispose of the '374 patent to avoid the property vesting in the Crown. (Doc. 46-3 (Chou Decl.) ¶ 6 ("[The BVI Entity] understood that for a number of years it could revive its corporate existence and the owners of [the BVI Entity] intended to maintain their interest in the '374 patent."); Doc. 46-4 (Pratt Decl.) ¶ 5; Doc. 46-5 (Kee Decl.) ¶¶ 5, 6.)

When the BVI Entity was struck from the rolls in 2009 for failure to pay annual fees, Section 215(a) of the Act applied, providing in part, "Where a company has been struck off the Register, the company and the directors, members and any liquidator thereof, may not . . . commence legal proceedings, carry on any business or in any way deal with the assets of the company . . . ." (Ex. A at ACT004.)

Because the BVI Entity intended to maintain its interest in the '374 patent, the BVI Entity, being without creditors, abandoned the '374 patent to the inventors who were the original owners. According to BVI law, the BVI Entity was prohibited from performing this assignment in writing. (Ex. A at ACT004.) The 2005 assignment expresses an intent of the inventors to take all lawful acts to secure legal title as vested in the BVI Entity and its successors. (Doc. 46-7 (2005 Assignment) at 3.)

In *Kahn v. General Motors Corp.*, 77 F.3d 457 (Fed. Cir. 1996), the inventor assigned his patent application to a corporation that the inventor controlled. *Id.* at 458. Later, the inventor sold his controlling interest of the corporation to a third party, who agreed to assign rights in the patent application and all continuation-in-part applications to either the corporation or the inventor. *Id.* The third-party controlling shareholder filed for bankruptcy and the inventor's corporation—which owned the patent applications—sold its assets at an auction. *Id.* The inventor testified that he purchased the patent applications at the auction. *Id.* When the inventor asserted the patent-in-suit against the defendant, the defendant argued that the inventor did not own the patent-in-suit. *Id.* at 458-59.

The defendant argued that the inventor failed to properly acquire legal title from the corporation that auctioned off its assets and dissolved. "The district court declined to allow General

Motors to 'hide behind the putative rights of a non-party, especially where, as here, neither side contends that such a party exists.'" *Kahn*, 77 F.3d at 459. The Federal Circuit affirmed, crediting the inventor's testimony that the inventor purchased the patent rights of the dissolved company: "We conclude that Mr. Kahn is the owner of the '994 patent and has legal title thereto. There are no rights encumbering this title, or any ownership interest in the '994 patent, legal or equitable, in KRLI, dissolved over twenty years ago." *Id.*

In this case, the unrebutted evidence shows an intent of the BVI Entity to secure its legal title in the '374 patent. (*See supra* at 5.) The 2005 assignment includes the inventors' promise to take all lawful acts to secure legal title in the BVI Entity. (Doc. 46-7 (2005 Assignment) at 3.) This evidence is like the evidence that the Federal Circuit accepted in *Kahn*, where the purported patent owner testified that he purchased the patent at an auction. *Kahn*, 77 F.3d at 458.

The absence of a third-party claimant was important to the district court in *Kahn*. *Id.* at 459. In this case, too, there is no third party with a potential interest in the patent.

Two other precedents teach that legal title to a patent reverts to the prior owner if the dissolved company has no creditors.

The Federal Circuit's predecessor court held: "The plaintiffs herein, being all of the shareholders of that corporation, became joint owners of Kroll's patent rights as a result of the dissolution. According to the transcript and the exhibits, defendant, on many occasions, treated with plaintiffs and their predecessor corporation as owners of the patent. In the absence of any countervailing proof, these admissions have sufficient evidentiary weight to establish plaintiffs' ownership and right to sue." *Carey v. U.S.*, 326 F.2d 975 (U.S. Ct. Cl. 1964)

Finally, the case *Sessions v. Romadka*, 145 U.S. 29 (1892), has similar facts to the issues

presented to this Court 130 years later. The patent owner filed for bankruptcy and did not list the patent as one of the patent owner's assets, apparently because the invention claimed in the patent was the cause of the patent owner's insolvency. *Id.* at 38. The trustee of the patent owner's bankruptcy estate—the assignee—also apparently deemed the patent to be of no value and did not include the patent in the property of the bankruptcy estate. *Id.* at 39. After the bankruptcy process was complete, the plaintiff, who filed the action subject of the *Sessions* appeal, purchased the patent from the original patent owner. *Id.* at 38. The Court held that the bankruptcy trustee abandoned the patent to the original patent owner, who possessed legal title that was transferred to the plaintiff. *Id.* at 38-39. Like the district court in *Kahn*, the Court rejected the invitation of the accused infringer to hold that a putative third party held legal title. *Id.* at 40.

In summary, the 2005 assignment discloses the intent of the inventors to take all lawful acts and accept legal title to the '374 patent when the BVI Entity ceased operations without creditors. The unrebutted evidence shows the BVI Entity's intent to dispose of the '374 patent because the BVI Entity intended to retain legal title rather than have title vest in the Crown. The record supports the Court finding that the Court had subject-matter jurisdiction to enter the order granting a dismissal with prejudice.

\*   \*   \*

Motorola relies on cases involving "agreements to assign." These cases do not support Motorola's argument that the 2019 assignment is ineffective as an assignment of the right to sue for past damages. (Doc. 46 (Mem.) at 16.)

The Federal Circuit analyzes the assignment agreement terms to determine whether the assignee was granted the entire title—including the right to sue for past damages. *Minco, Inc. v.*

*Combustion Engineering, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996). In that case, the assignor disclaimed an interest in the right to enforce the patent and stated that the assignee would now enjoy those rights. *Id.* at 1117-18. Similarly, here, the inventors covenanted to aid Plaintiff WiNet in the enforcement of the '374 patent. The right to enforce was assigned to Plaintiff WiNet and the inventors would help if WiNet desired to "enforce [the '374 patent] . . . and to perfect and vest in the ASSIGNEE the entire right, title and interest in the invention, applications and Letters Patent." (Dkt. 46-6 (2019 Assignment) at 2.)

The 2019 assignment is the broadest possible grant, confirmed by the inventors retaining nothing. "In determining whether a grant of all substantial rights was intended, it is useful to examine what rights, if any, were retained by the transferor." *State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1063 (Fed. Cir. 2003). The grant was entire. The inventors retained nothing.

**II.   WINET OWNED THE '374 PATENT WHEN WINET FILED THE COMPLAINT BECAUSE THE 2005 ASSIGNMENT SHOULD BE REFORMED TO EXPRESS AN INTENT FOR LEGAL TITLE TO REVERT TO THE INVENTORS.**

Alternatively, if the Court declines to hold that reversion of legal title to the '374 patent is supported by the 2005 assignment, WiNet requests that the Court equitably reform the contract.

The 2005 assignment was between the BVI Entity—located in China—and the inventors—located in China and the United States. (Doc. 46-7 (2005 Assignment) at 3.) WiNet requests that the Court apply Illinois law with respect to reformation of contracts. *Modern Space Design & Decoration (Shanghai) Co., Ltd. v. Lynch*, 13 C 4329, 2014 WL 48973221, *3 (N.D. Ill. Sept. 29, 2014) (applying Illinois law to arbitration clause apparently governed by Chinese law).

"In order for a court to reform an instrument on the ground of mistake, 'the mistake must

be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another.'" *Zannini v. Reliance Ins. Co. of Ill., Inc.*, 147 Ill.2d 437, 449 (1992) (internal citations omitted).

The BVI Entity intended to maintain its legal title to the '374 patent. The inventors intended to take all lawful acts to secure and vest legal title in the BVI Entity. The parties mutually made a mistake of fact, believing that the terms of the 2005 assignment were sufficient to revert title to the inventors upon the cessation of the BVI Entity with no creditors. The inventors could take all lawful acts according to the 2005 assignment, and the inventors could lawfully accept a reversion of legal title to the '374 patent if the BVI Entity had no creditors. *See* Ex. A (§ 215(3) ("The fact that a company is struck off the Register does not prevent . . . any creditor from making a claim against the company and pursuing the claim through to judgment or execution . . . .").)

The Federal Circuit affirmed the district court's decision to reform an assignment: "When a court reforms a contract, it simply assures that the written instrument properly reflects the parties' agreement. The agreement was effective when made, not as of the date of the reformation. . . . By virtue of the reformation, the written instrument was corrected *nunc pro tunc*, to the point of the assignment." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1074 (Fed. Cir. 2020).

Here, if the Court decides that the 2005 assignment expresses insufficient intent to support the reversion to the inventors to protect the BVI Entity's legal title in the '374 patent, then WiNet requests that the Court use its equitable power to reform the contract to express the intent that all lawful acts include the inventors accepting the reversionary legal title to the '374 patent at the

cessation of the BVI Entity without creditors.

With the 2005 assignment thus reformed, the record would support the Court finding that the Court had subject-matter jurisdiction to enter the order granting a dismissal with prejudice.

### III. THE COURT SHOULD DISMISS THIS CASE WITHOUT PREJUDICE IF THE COURT DECLINES TO ENFORCE OR REFORM THE 2005 ASSIGNMENT.

"If a complaint fails to include enough allegations to support Article III standing for the plaintiffs, the court has only two options: it can either dismiss the complaint with leave to amend, or it can dismiss the case for want of jurisdiction and hence without prejudice." *MAO-MSO Recovery II, LLC v. Nanya Tech. Corp.*, 935 F.3d 573, 581 (7th Cir. 2019).

If the Court holds that title to the '374 patent has vested in the Crown, Plaintiff WiNet has recourse under BVI law to restore the BVI Entity and regain title to the '374 patent. "When a company is restored to the Register, any property, other than money, that was vested in the Crown under subsection (1) on dissolution of the company and that has not been disposed of must be returned to the company upon its restoration to the Register." (Ex. A (§ 220(2)) at ACT008.)

### CONCLUSION

WiNet agrees with the result Motorola argues for in its second motion to dismiss—WiNet asserts that the Court had subject-matter jurisdiction when the Court dismissed the complaint with prejudice. WiNet disagrees entirely with the legal framework to support the result.

WiNet requests that the Court enter its order dismissing the complaint with prejudice, holding that the Court had subject-matter jurisdiction to enter the order because the 2005 assignment evinces the parties' intent for legal title to the '374 patent to revert to the inventors upon the cessation of the BVI Entity without creditors.

Alternatively, if the Court declines to find such intent in the 2005 assignment as a matter

of law, WiNet requests that the Court reform the instrument to give effect to the parties' intent and overcome the parties' mistake that a reversion of interests is what the assignment in fact provided. The assignment thus reformed would also support the Court's subject-matter jurisdiction and the dismissal of the complaint with prejudice.

According to the Seventh Circuit, if the Court holds that the Court lacks subject-matter jurisdiction, then the Court should dismiss this case without prejudice.

Date: <u>July 16, 2021</u>

Respectfully Submitted,

<u>/s/ Matthew M. Wawrzyn</u>
Matthew M. Wawrzyn (ARDC#6276135)
*matt@wawrzynlaw.com*
WAWRZYN LLC
200 Randolph Street, Suite 5100
Chicago, IL 60601
(312) 235-3120

*Counsel for WiNet Labs LLC*