**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WINET LABS LLC, <br><br> Plaintiff, <br><br> v. <br><br> MOTOROLA MOBILITY LLC, <br><br> Defendant. | Case No. 1:20-cv-01094 <br><br> Honorable Harry D. Leinenweber |

**MOTOROLA MOBILITY LLC'S REPLY IN SUPPORT OF
ITS SECOND MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. REPLY ARGUMENT ...........................................................................................................2

    A. WiNet's Reversionary Right Theory Has No Basis in the Original Assignment or BVI Law. ............................................................................................ 2

        1. The Original Assignment Did Not Leave the Inventors Reversionary Rights in the '374 Patent. ..............................................................................2

        2. Nothing Supports WiNet's Assertion that BVI Law Permitted the BVI Entity to Transfer the '374 Patent Back to the Inventors.............................4

    B. WiNet Cannot Demonstrate that the Original Assignment Should be Reformed................................................................................................................. 6

        1. WiNet Has Failed to Show that Applicable Law Permits Reformation of Contract. ..................................................................................................6

        2. Even If Illinois Law Applies, No Factual Basis to Reform the Original Assignment Exists.....................................................................................8

    C. WiNet Also Lacks Standing Because the 2019 Assignment Did Not Convey The Right to Sue For Past Damages. ................................................................... 10

III. CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010)..................................................................................................11

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) .......................................................................................................7

*Bank of Guam v. U.S.*,
  578 F.3d 1318 (Fed. Cir. 2009)..................................................................................................11

*Carey v. U.S.*,
  326 F.2d 975 (Ct. Cl. 1964) .........................................................................................................5

*FilmTec Corp. v. Allied-Signal, Inc.*,
  939 F.2d 1568 (Fed. Cir. 1991)................................................................................................3, 4

*Kahn v. General Motors Corp.*,
  77 F.3d 457 (Fed. Cir. 1996).......................................................................................................5

*Kitaru Innovations Inc. v. Chandaria*,
  698 F. Supp. 2d 386 (S.D.N.Y. 2010).........................................................................................7

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996)...................................................................................................10

*Modern Space Design & Decoration (Shanghai) Co. v. Lynch*,
  No. 13 C 4329, 2014 WL 4897322 (N.D. Ill. Sept. 29, 2014)....................................................7

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
  959 F.3d 1065 (Fed. Cir. 2020)...................................................................................................7

*Sessions v. Romadka*,
  145 U.S. 29 (1892).......................................................................................................................5

*Suburban Bank of Hoffman-Schaumburg v. Bousis*,
  578 N.E.2d 935 (Ill. 1991)...........................................................................................................8

**STATUTES**

BVI Business Companies Act, 2004..............................................................................................5

**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................................................11

**I.        INTRODUCTION**

WiNet unquestionably lacks standing, so this case should be dismissed for lack of subject matter jurisdiction. In Motorola's opening brief in support of its Second Motion to Dismiss, Motorola demonstrated that (1) the chain of title for the '374 patent is broken and does not connect to WiNet; and (2) WiNet's "reversionary right" theory to bridge the gap in the chain of title has no basis in fact or law.[1,2] WiNet's response to Motorola's Second Motion to Dismiss doubles down on the "reversionary right" theory relying on baseless factual assertions and flawed legal theories.

WiNet asserts that the Original Assignment contains a provision that gave the inventors reversionary rights, but it unequivocally does not. WiNet also asserts that the law of the British Virgin Islands ("BVI") permits property owned by a BVI corporation to revert back to the property's original owners upon the dissolution of the corporation. But that is flat wrong, too. Upon dissolution of a BVI corporation, BVI law transfers the corporation's property to the BVI Government.

WiNet then seeks a lifeline and requests that this Court apply Illinois law to rewrite the Original Assignment so that it retroactively provides the inventors with reversionary rights. However, Illinois law does not apply to the Original Assignment—a contract with zero connections to Illinois. Additionally, the factual circumstance necessary to trigger Illinois

---

[1] "WiNet" means Plaintiff WiNet Labs LLC; "Motorola" means Defendant Motorola Mobility LLC; and "the '374 patent" means U.S. Patent No. 7,593,374.

[2] According to WiNet, it acquired the '374 patent through the following process: (1) the inventors of the patent assigned the patent to a British Virgin Islands company ("the BVI Entity") via a 2005 written assignment contract (Dkt. 46-7) ("the Original Assignment"); (2) upon the dissolution of the BVI Entity, the inventors purportedly regained ownership of the patent via a supposed "reversionary right" in the patent; and (3) the inventors purportedly assigned the patent to Plaintiff WiNet Labs LLC, a Wyoming company, via a 2019 written assignment contract (Dkt. 46-6) ("the 2019 Assignment").

1

reformation of contract law—namely a mistake in the Original Assignment—does not exist here, so WiNet's reformation of contract argument fails even if Illinois law were applicable.

Finally, none of the assignments in the (broken) chain of title transferred the right to sue for past damages, so WiNet lacks standing to sue for infringement of the expired '374 patent. For these reasons, this Court should dismiss this action for lack of standing and subject matter jurisdiction. The Court should also re-enter its dismissal of the action for failure to state a claim as an alternative basis for dismissal in addition to the Court's dismissal for lack of standing and of jurisdiction.

## II.     REPLY ARGUMENT

### A.     WiNet's Reversionary Right Theory Has No Basis in the Original Assignment or BVI Law.

In its primary argument, WiNet asserts that its "reversionary rights" theory is based on the Original Assignment and BVI law. But nothing of substance is actually behind WiNet's assertions, and the reversionary rights theory is contradicted by the facts and is unavailable under the law. The Original Assignment and applicable BVI law demonstrate that (1) the inventors did not maintain any reversionary rights in the '374 patent when they executed the Original Assignment and (2) BVI law prohibited the transfer of the '374 patent to the inventors when the BVI Entity dissolved. As a result, the inventors never reacquired rights in the '374 patent from the BVI Entity, so the inventors transferred no rights to WiNet through the 2019 Assignment. WiNet therefore lacks standing, and this Court lacks subject matter jurisdiction.

#### 1.     The Original Assignment Did Not Leave the Inventors Reversionary Rights in the '374 Patent.

WiNet claims that the Original Assignment left the inventors with reversionary rights in the '374 patent. (Dkt. 50 at 6, 21-16.) That is false. The provision in the Original Assignment that

2

WiNet claims "express[es] an intent for legal title to revert to the inventors"[3] is reproduced in pertinent part below and says nothing about the inventors maintaining reversionary rights:

> AND I HEREBY further covenant and agree that I . . . at the request of said ASSIGNEE [the BVI Entity], execute any and all . . . papers and documents, and testify in any legal proceedings, and make rightful oaths, and generally do all other and further lawful acts that the ASSIGNEE [the BVI Entity] may deem necessary or desirable to obtain and enforce Letters Patent on said invention, to secure the grant of such Letters Patent and to perfect and vest in the ASSIGNEE [the BVI Entity] the entire right, title and interest in the inventions, applications and Letters Patent.

(Dkt. 46-7.) Contrary to WiNet's claim, the provision demonstrates that the inventors sought to avoid maintaining any rights in the '374 patent and, instead, "vest in [the BVI Entity] the ***entire, right, title and interest in the inventions***" of the '374 patent. (*Id.* (emphasis added)).

WiNet's reliance on the Original Assignment for its "reversionary rights" theory is premised upon a nonsensical contradiction: that the BVI Entity gave *the inventors* reversionary rights so that *the BVI Entity* could "retain legal title." (Dkt. 50 at 13 ("Because the BVI Entity intended to maintain its interest in the '374 patent, the BVI Entity . . . abandoned the '374 patent to the inventors . . . ."); *id.* at 15 ("The unrebutted evidence shows the BVI Entity's intent to dispose of the '374 patent because the BVI Entity intended to retain legal title rather than have title vest in the Crown.").) That makes no sense and belies the fundamentals of patent ownership. *See FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (an assignor does not retain patent rights after assigning its entire right title and interest in an invention).

WiNet also expresses the purported intentions of the '374 patent's inventors and the BVI Entity's former owners as though they support WiNet's theory, but the owners' and inventors' intentions are actually inconsistent with the inventors maintaining reversionary rights. WiNet

---

[3] (Dkt. 50 at 12 (capitalization removed for readability).)

states that "the owners of the BVI Entity have always intended to maintain their interest in the '374 patent and that the inventors have always intended for legal right to the '374 patent to be held by the BVI Entity or a successor." (Dkt. 50 at 6; *see also id.* at 12, 15.) But if the owners wanted to obtain and hold interests in the patent, and the inventors want to give away their interests in the patent, then *no one* intended for the *inventors* to maintain any interest in the '374 patent. (*Id.*) Indeed, because three of the inventors were not owners of the BVI Entity, enabling the inventors to maintain reversionary rights in the '374 patent could have encumbered title to the '374 patent. (*Compare* Dkt. 46-4 at ¶ 3 (listing owners) *with* Dkt. 46-2 at ¶ 17 (listing three inventors as having no equity holdings in the BVI Entity).)

Therefore, pursuant to the Original Assignment and consistent with everyone's intentions, the inventors assigned their "entire right, title and interest" to the '374 patent to the BVI Entity without maintaining any reversionary rights (Dkt. 46-7). *See FilmTec*, 939 F.2d at 1572. WiNet's reversionary right theory therefore has no basis or in the Original Assignment or the intentions the BVI Entity, its owners, or the '374 patent's inventors.

> **2.  Nothing Supports WiNet's Assertion that BVI Law Permitted the BVI Entity to Transfer the '374 Patent Back to the Inventors.**

WiNet also argues that BVI law permitted the '374 patent to transfer from the BVI Entity back to the inventors when it dissolved in 2016 "because the BVI Entity had no creditors." (Dkt. 50 at 12-15 ("Accepting this reversion of legal title was a lawful act under BVI law, because the BVI Entity had no creditors.").) That is incorrect. BVI law—which both WiNet and Motorola agree govern the dissolution of the BVI Entity—did not permit such a transfer. (Dkt. 50 at 6, 12-15; Dkt. 50-1; Dkt. 46 at 14; Dkt. 46-11 at 130 (BVI Business Companies Act, 2014, Part XII, addressing striking-off and dissolution).)

According to BVI law, it was impossible for the BVI Entity to transfer the '374 patent to

4

the inventors at the time of its dissolution. First, since 2009, the BVI Entity was prohibited under BVI law from transferring the '374 patent to the inventors. As admitted by WiNet, "[w]hen the BVI Entity was struck from the rolls in 2009 for failure to pay annual fees, **Section 215(a) of the [BVI Business Companies] Act applied**, providing in part, 'Where a company has been struck off the Register, *the company and the directors, members and any liquidator thereof, may not* . . . commence legal proceedings, carry on the business or *in any way deal with the assets of the company* . . . .'" (Dkt. 50 at 13 (quoting the BVI Business Companies Act, 2004, Section 215(a)) (emphasis added).) The BVI Entity was therefore prohibited under BVI law from transferring the '374 patent to the inventors since it was struck from the corporate register in 2009, and whether the BVI Entity had creditors is irrelevant.

Second, WiNet concedes that, under BVI law, "'any property of a company that has not been disposed of at the date of the company's dissolution vests in the Crown.'" (*id.* at 6, 12 (quoting the BVI Business Companies Act, 2004, Section 220(1)).) Therefore, upon dissolution of the BVI Entity, the '374 patent transferred to the Crown (*i.e.*, the BVI government), not the inventors.

Last, WiNet cites three cases as purportedly describing how corporate assets are transferred upon dissolution of a corporation, but they are inapposite because none addresses the BVI Business Companies Act, 2004, and the purported patent owners in those cases presented some factual evidence that they obtained title to the patents at issue, while WiNet has presented none. *See Kahn v. General Motors Corp.*, 77 F.3d 457, 459 (Fed. Cir. 1996) (after a company went bankrupt, the plaintiff acquired a patent when it purchased the company's assets at auction); *Carey v. U.S.*, 326 F.2d 975, 977 (Ct. Cl. 1964) (relying on defendant's repeated admissions that the plaintiff and its predecessor were owners of the patent); *Sessions v. Romadka*, 145 U.S. 29, 38-39 (1892)

(interpreting 19th century U.S. bankruptcy law to find that a bankrupt individual did not lose title to his patent because the bankruptcy assignee elected to not accept the patent).

### B. WiNet Cannot Demonstrate that the Original Assignment Should be Reformed.

Because neither the Original Assignment nor BVI law grants the inventors reversionary rights in the '374 patent, WiNet asks this Court to rewrite the Original Assignment using an equitable principle in Illinois, reformation of contract, which permits a court interpreting an Illinois contract to fix a mutual mistake in the contract. (Dkt. 50 at 16-18.) WiNet claims that the inventors and the BVI Entity reached an agreement for the inventors to retain reversionary rights in the '374 patent that would be triggered upon "the cessation of the BVI Entity without creditors," but the inventors and the BVI Entity "mutually made a mistake of fact" in failing to express that agreement in the Original Assignment. (Dkt. 50 at 16-18.) This argument also fails on the law and on the facts.

First, the Original Assignment—a contract having no connection to Illinois—is not governed by Illinois law, so it cannot be reformed under Illinois reformation of contract law as WiNet requests. Second, even if Illinois law did apply, absolutely no evidence supports WiNet's assertion that the BVI Entity and the inventors reached an agreement giving the inventors reversionary rights and then mistakenly omitted that agreement from the Original Assignment, which WiNet needed to have proven by clear and convincing evidence to invoke the Illinois reformation of contract doctrine. On the contrary, the evidence overwhelmingly demonstrates that the Original Assignment correctly reflects that the BVI Entity and the inventors intended for the inventors to convey all their rights in the '374 patent to the BVI Entity.

#### 1. WiNet Has Failed to Show that Applicable Law Permits Reformation of Contract.

WiNet requests that this Court apply Illinois law "with respect to reformation of contracts."

6

(Dkt. 50 at 16-17.) WiNet bears the burden of establishing standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). However, WiNet provides no explanation as to why Illinois law applies here, and it does not. (Dkt. 50 at 16-18.)

The Original Assignment does not contain a choice-of-law provision, so the Original Assignment must be "interpreted in accordance with contract statutes and common law in the state where the assignment took place." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020).[4] The Original Assignment is between the BVI Entity and the inventors of the '374 patent. (Dkt. 50 at 16; Dkt. 46-7.) At the time of the Original Assignment, the BVI Entity was a BVI corporation with its principal place of business in China, four inventors were residents of China, and one inventor was a resident of Pennsylvania. (Dkt. 50 at 16; Ex. 11).[5] The Original Assignment therefore has no connection to Illinois, so Illinois law is inapplicable. *See Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 394 (S.D.N.Y. 2010) (without a choice-of-law provision, there was no suggestion that New York law applied to a dispute over a patent assignment where the assignment was executed in Kenya between persons and an entity having connections to Barbados, the United Kingdom, and Kenya).

Because WiNet failed to present evidence that reformation of contract under Illinois law is applicable, WiNet failed to prove that the gap in the chain of title of the '374 patent can be closed through Illinois reformation of contract. WiNet has therefore failed to carry its burden of demonstrating its standing to pursue this action.

---

[4] WiNet cites a case, *Modern Space Design*, for the proposition that Illinois law can be applied even though a contract is governed by Chinese law. (Dkt. 50 at 16.) However, *Modern Space Design* is inapposite because no party in *Modern Space Design* objected to the application of Illinois law, whereas Motorola objects here. *Modern Space Design & Decoration (Shanghai) Co. v. Lynch*, No. 13 C 4329, 2014 WL 4897322, at *3 (N.D. Ill. Sept. 29, 2014) (finding Illinois law can be applied because "both [parties] appear content to have the case resolved under Illinois law").

[5] Exhibit citations refer to the exhibits attached to the Declaration of Louis A. Klapp filed herewith.

### 2. Even If Illinois Law Applies, No Factual Basis to Reform the Original Assignment Exists.

Even if Illinois law applies to the Original Assignment, the Court cannot reform the Original Assignment because the Original Assignment correctly reflects that the inventors and the BVI entity intended for the inventors to convey all their rights in the '374 patent to the BVI Entity. In Illinois, reformation of contract is an equitable principle that permits a court to reform a written contract where the parties came to an agreement but made a mistake in reducing the agreement to writing. *Suburban Bank of Hoffman-Schaumburg v. Bousis*, 578 N.E.2d 935, 939 (Ill. 1991). The reformation of contract doctrine cannot be used to "make a new agreement for the parties," "nor can it be used to add a provision to the contract that was never agreed upon." *Id.* at 940. Instead, the Court may reform a contract only if the party seeking reformation proves by clear and convincing evidence that the written agreement omitted an agreed-upon provision or included an erroneous provision. *Id.* at 939.

Here, WiNet asserts that that the inventors and the BVI Entity came to an agreement in 2005 for the inventors to retain reversionary rights in the '374 patent that would be triggered upon "the cessation of the BVI Entity without creditors," but the inventors and the BVI Entity "mutually made a mistake of fact" in failing to express that agreement in the Original Assignment. (Dkt. 50 at 16-18.) The Court should reject WiNet's assertion because it is baseless.

WiNet failed to present any evidence that the inventors and the BVI Entity agreed that the inventors would maintain reversionary rights in the '374 patent but then mistakenly omitted that agreement from the Original Assignment. Specifically, none of WiNet's declarations or any other aspect of WiNet's Offer or Proof mention any such (i) agreement or (ii) mistake. (*See* Dkt. 46-2– Dkt. 46-7.) WiNet's reformation of contract argument therefore has no factual basis. For that reason alone, WiNet's argument fails. *See Suburban Bank*, 578 N.E.2d at 939 ("It is assumed that

8

the parties' written agreement expresses their mutual intention, and this conclusion will not yield to any other unless the contrary evidence is clear and convincing.").

Second, the evidence of record demonstrates that the BVI Entity and the inventors did <u>not</u> agree to have the inventors maintain reversionary rights in the '374 Patent when the inventors executed the Original Assignment, so the Original Assignment contains no mistake that can be corrected through reformation of contract. The Original Assignment repeatedly states that the inventors agreed to assign their "entire right, title and interest" in the '374 patent:

> [The BVI Entity] is desirous of obtaining the entire right, title and interest in, to and under said invention and said application. . . .
>
> [The inventors] have sold and do hereby sell, assign, transfer and set over unto [the BVI Entity] . . . my entire right, title and interest in and to said invention . . . .
>
> [The inventors] covenant and agree that I will . . . secure the grant of such Letters Patent and to perfect and vest in the ASSIGNEE the entire right, title and interest in the inventions . . . .

(Dkt. 46-7.)

Moreover, the fact that all of the inventors executed the Original Assignment without incident demonstrates that the Original Assignment accurately reflected the inventors' agreement to assign all their rights in the '374 patent to the BVI Entity. The Original Assignment is a short document; it consists of a single page. (*Id.*) Five inventors executed the single-paged Original Assignment. (*Id.*) If the Original Assignment repeatedly made incorrect statements regarding the scope of the inventors' assignment of rights as WiNet alleges, one of those inventors would have recognized the errors during their review and execution of the document.

Moreover, the lack of a mistake in the Original Assignment is proven by other evidence in the record. WiNet's declarant Bob Chou, who is an inventor of the '374 patent and former owner of the BVI Entity, admitted that he certified to the U.S. Patent Office that the BVI Entity "was 'the assignee of the entire right, title, and interest'" of the '374 patent (Dkt. 46-3 at ¶ 3.) Indeed, in

9

2008, when asked in a USPTO form whether the BVI Entity was (a) "the assignee of the entire right, title and interest" of the '374 patent or (b) "an assignee of less than the entire right, title and interest" in the '374 patent, Mr. Chou certified that the BVI Entity was "the assignee of the entire right, title and interest" in the '374 patent." (Ex. 12 (highlighted in relevant part).)

Additionally, the absence of certain evidence from the record is probative that the Original Assignment contains no mistake. None of WiNet's declarants—two of whom are inventors of the '374 patent—mention any agreement for the inventors to maintain reversionary rights or any mistake in the Original Assignment. (*See* Dkt 46-3–Dkt. 46-5.) Those omissions further show that the inventors and the BVI Entity intended for the inventors to convey all their rights in the '374 patent to the BVI Entity, and that there is no mistake in the Original Assignment to reform. The Court should therefore reject WiNet's reformation of contract argument.

### C. WiNet Also Lacks Standing Because the 2019 Assignment Did Not Convey The Right to Sue For Past Damages.

Finally, even if certain rights reverted back to the inventors, WiNet still lacks standing because the 2019 Assignment did not transfer to WiNet the right to sue for past infringement, which Motorola demonstrated in its opening brief were rights necessary for WiNet to have standing here. (Dkt. 46 at 16-17.) In its response, WiNet relies on *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996), but *Minco* actually highlights that the chain of title of the '374 patent does not include the conveyance of rights necessary to sue for past infringement.

In *Minco*, the chain of title included multiple assignments. *Id.* at 1117. The first assignment expressly included "'all rights of action and damages for past infringement,'" and the subsequent assignments incorporated the terms of the first assignment. *Id.* at 1117-18. The Court therefore found that the subsequent assignments conveyed the first assignment's right to sue for past damages. *Id.* at 1118. Here, on the other hand, neither the Original Assignment nor the 2019

10

Assignment contain a provision expressly granting the right to sue for past infringement. (Dkt. 46-7; Dkt. 46-6.). As a result, the right to sue for past infringement could not have been transferred to WiNet, so WiNet lacks standing. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010) ("A party may sue for past infringement transpiring before it acquired legal title if a written assignment expressly grants the party a right to do so.").

### III. CONCLUSION

For the reasons stated above and in Motorola's Memorandum in Support of its Second Motion to Dismiss (Dkt. 46), Motorola respectfully asks the Court to issue an order dismissing WiNet's Complaint pursuant to Rule 12(b)(1) for lack or standing in addition to its prior dismissal with prejudice pursuant to Rule 12(b)(6). *See Bank of Guam v. U.S.*, 578 F.3d 1318, 1325-26 (Fed. Cir. 2009) (reviewing both the district court's grant of plaintiff's 12(b)(1) and 12(b)(6) motions).

Dated: July 30, 2021

Respectfully submitted,

*/s/ Louis A. Klapp*
Stephen M. Hankins
RILEY SAFER HOLMES & CANCILA LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
t: 415-275-8550
f: 415-275-8551
shankins@rshc-law.com

Louis A. Klapp
Michael H. Fleck
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
t: 312-471-8700
f: 312-471-8701
lklapp@rshc-law.com
mfleck@rshc-law.com

*Attorneys for Defendant*
*MOTOROLA MOBILITY LLC*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on July 30, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

                                                        */s/ Louis A. Klapp*