**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WINET LABS LLC, | |
| Plaintiff, | Case No. 20 C 1094 |
| v. | Judge Harry D. Leinenweber |
| MOTOROLA MOBILITY, LLC, | |
| Defendant. | |

# ORDER

Defendant Motorola Mobility, LLC's ("Motorola") Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 45) is granted. Defendant Motorola's Motion for Extraordinary Relief (Dkt. No. 27) is granted.

## I.  BACKGROUND

On August 4, 2020, the Court dismissed Plaintiff WiNet Labs LLC's ("WiNet") Complaint with prejudice on the merits. (Dkt. No. 25.) Plaintiff WiNet appealed the decision to the Federal Circuit, and Defendant Motorola filed a Motion for Attorneys' Fees with this Court. (Dkt. Nos. 27, 30.) In both the appellate briefing and attorneys' fees filing, Motorola challenged WiNet's standing and the Court's jurisdiction. This Court stayed the motion for Attorneys' Fees pending the resolution of WiNet's appeal. (Dkt. No. 35.)

On April 12, 2021, the Federal Circuit found that the record provided by the parties created a serious question as to WiNet's Article III standing. Since "Motorola did not present the issue or relevant facts to [the district] court before the dismissal on the merits," the Federal Circuit vacated the judgment and remanded for

this Court to address the Article III question. *WiNet Labs LLC v. Motorola Mobility LLC*, 855 F. App'x 672, 675 (Fed. Cir. 2021). The Court ordered the parties to brief a second motion to dismiss on the basis of standing and jurisdiction. (Dkt. No. 44.) The Court now decides the second Motion to Dismiss (Dkt. No. 45) and Motorola's Motion for Extraordinary Relief. (Dkt. No. 27.)

On May 2, 2005, Lin Zhang, Bob Chou, Haoxiang Zhou, Zhe Yu, and Lei Zhang (collectively, the "Inventors") filed Patent Application No. 11/121,837 with the U.S. Patent and Trademark Office. In conjunction with their application, the Inventors assigned their "entire right, title and interest in and to said inventions and all improvements thereon" in the patent to M-Labs, Ltd., an entity incorporated in the British Virgin Islands ("BVI"). (2005 Assignment, Mot., Ex. 6, Dkt. No. 46-7.) As set forth in the unsworn testimony provided by WiNet, the company M-Labs Ltd. changed its name to WiNet Labs, Ltd. ("WiNet BVI"), still under the laws of the British Virgin Islands. (Pratt Decl. ¶ 2, Mot., Ex. 3, Dkt. No. 46-4.)

In 2008, WiNet BVI defaulted on its annual registration fee. (Apostille and Cert., Mot., Ex. 7, Dkt. No. 46-8.) As a result, the Company was struck from the register on May 1, 2009. (*Id.*) Because the company remained struck continually for 7 years, it was dissolved on April 30, 2016, in accordance with Section 216 of the British Virgin Islands' Business Companies Act of 2004. (*Id.*)

Over the course of March and April of 2019, the Inventors re-assigned their rights to Patent Application 11/121,837, now issued Patent No. 7,593,374 (the "'374 patent"), to a new entity. (2019 Assignment, Mot., Ex. 5, Dkt. No. 46-6.) The assignment asserts that "because WiNet Labs Limited ceased operations the ownership of the Letters Patent of the United States (Patent No. 7,593,374, Application No. 11/121,837) has now reverted to us." (*Id.*) The

Inventors then assigned their rights to a new company, entitled WiNet Labs, LLC, incorporated in the State of Wyoming, and plaintiff in this action. (*Id.*) WiNet relies on this patent assignment in the present litigation.

## II. <u>LEGAL STANDARD</u>

A Rule 12(b)(1) motion challenges the subject-matter jurisdiction of the Court. FED. R. CIV. P. 12(b)(1). When, as here, the defendant raises a factual challenge to jurisdiction, the complaint is formally sufficient, but external facts may call into question the plaintiff's standing and whether the plaintiff is entitled to have the court decide the merits of the dispute. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-444 (7th Cir. 2009). Because "federal jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

A plaintiff in a patent infringement suit has the burden of proving ownership of the patent on which the suit is based. *Pinpoint, Inc. v. Amazon.Com, Inc.*, 347 F.Supp.2d 579, 581 (N.D. Ill. 2004). Without the patent ownership, the court lacks subject-matter jurisdiction, and the case must be dismissed. *Id.*

## III. <u>DISCUSSION</u>

The parties agree that all rights relating to '374 patent were assigned to the company WiNet BVI, and that WiNet BVI was dissolved permanently due to continual nonpayment of fees to British Virgin Islands. The BVI Business Companies Act 2004, d. 3 § 220, holds that "any property of a company that has not been disposed of at the date of the company's dissolution vests in the Crown." As a result, the rights to the '374 patent presently reside with the Crown of the United Kingdom. *See JPMorgan Chase Bank v.*

*Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 92 (2002) ("[T]he current BVI Constitution was established when the Crown of the United Kingdom, in the exercise of power granted by the West Indies Act, 1962, c. 19, § 5(1), issued the Virgin Islands (Constitution) Order 1976, SI 1976/2145."). In attempt to circumvent this conclusion, Plaintiffs present several arguments, but none are effective.

First, WiNet argues that the parties intended to maintain their interest in the '374 patent and avoid the property vesting in the Crown. In support, WiNet sites *Kahn v. General Motors Corp.*, 77 F.3d 457 (Fed. Cir. 1996). In *Kahn*, certain related patent applications were issued to the inventor, Mr. Kahn. *Id.* at 458. Mr. Kahn assigned these patent applications, as well as "all patents issuing by continuation or continuation-in-part" to the company KRLI. *Id.* Kahn then sold his controlling stock in KRLI to a third party, Electrospace Corporation. *Id.* Later, however, KRLI executed a written assignment of some of the patent rights back to Mr. Kahn. *Id.* Mr. Kahn later purchased, at auction, all remaining KLRI patent rights prior to KLRI's bankruptcy. *Id.* Because Mr. Kahn had reacquired all rights, either through the assignment or at auction, the Federal Circuit held that Mr. Kahn held the rights to the disputed patent. *Id.* at 459.

In the present case, however, the '374 patent inventors did not recoup any of their rights at an auction or by assignment from WiNet BVI. As a result, the rights to the patent transferred as set forth in BVI law to the Crown, and the Inventors had no rights to provide to any other person. A similar flaw prevents applicability of the second case WiNet relies on, *Sessions v. Romadka*, 145 U.S. 29 (1892). The plaintiff in *Sessions* had acquired the disputed patent from a Mr. Poinier. *Id.* at 37. Poinier had purchased the patent in 1872 and then relied upon it to produce

trunk fasteners. *Id.* at 38. After this business venture proved to be a failure, Poinier declared bankruptcy. *Id.* Neither Poinier nor the trustee of the bankruptcy estate listed the patent as an asset in the bankruptcy. *Id.* After the bankruptcy was closed, the plaintiff approached the bankruptcy trustee about obtaining the rights to the patent. *Id.* The trustee directed the plaintiff to return to Poinier, noting that the estate had been settled and Poinier continued to possess the patent rights. *Id.* Poinier subsequently sold the patent rights to the plaintiff. *Id.* The Supreme Court held that the bankruptcy trustee had chosen to not accept the assignment of the patents' rights, and thus had abandoned them back to Poinier. *Id.* at 39. For the '374 patent, neither the original inventors nor the current WiNet attempted to purchase the rights back from the Crown. As a result, neither can claim that the rights have been abandoned by the Crown. *Khan* and *Sessions* have vastly different postures than the one before the Court and are inapplicable to the present litigation.

WiNet next points to (1) the unsworn testimony alleging WiNet BVI has no creditors, (2) the unsworn testimony that WiNet BVI intended to maintain its interest in the '374 patent and so intentionally "abandoned" its interest to the Inventors, and (3) the 2019 assignment that includes the assertion that the patent rights reverted to the inventors upon dissolution of WiNet BVI, in order to demonstrate WiNet's patent rights. None of these facts disrupt the normal processes of business law.

First, the assertion that WiNet lacks creditors appears to overlook the interests that the Crown has in maintaining businesses in the British Virgin Islands. WiNet BVI defaulted on the annual registration fees required for operation, including the operation of transferring property rights. The benefits enjoyed by creating a company in the BVI are granted as set forth under the laws of

the BVI, and at the time and expense of the BVI Government. According to its laws, a prolonged default of payment creates the Crown's interest in any remaining property, along with the dissolution of the company. The Court declines to ignore the legal consequences of WiNet BVI's actions because of a lack of additional creditors beyond the BVI Government.

Second, the Court agrees that WiNet BVI abandoned its property interests. That is why the interests currently belong to the Crown. The post-hoc intentions asserted by the Inventors do not change this legal conclusion. Without an instrument transferring their interests prior to the dissolution under BVI law, the later-expressed intentions of those who ran the company and the Inventors through the 2019 assignment do not have legal weight. Regardless of what the second assignment purports, without proof of transference of the rights from WiNet BVI back to the Inventors, the Inventors do not have the power to further assign rights to the newly formed WiNet company.

In the alternative, WiNet requests that the Court equitably reform the contract. Under Illinois law, the reformation of a contract is actionable when "the parties had reached an agreement, but in reducing it to writing, some provision agreed upon was omitted or one that was not agreed upon was inserted, either through mutual mistake or mistake on the part of one party and fraud on the part of the other." *Friedman v. Dev. Mgmt. Grp., Inc.*, 403 N.E.2d 610, 612 (Ill. App. Ct. 1980). Under those circumstances, reformation alters the contract to fit the original understanding. *Id.* WiNet has produced no evidence that the inventors originally intended to include a reversion clause. Instead, the only evidence before the Court is that the Inventors wish in hindsight that there had been a revision clause. Perhaps even more importantly, reformation is not permitted when it

- 6 -

adversely affects the rights of a third party without notice. *Matter of Bailey*, 999 F.2d 237, 242 (7th Cir. 1993) (citing *Gatton v. Page*, 358 N.E.2d 685, 687 (Ill. App. Ct. 1976)). The Court cannot destroy a foreign power's third-party rights in current property.

Plaintiff has failed to establish that it is the owner of the '374 patent and therefore has not met the burden of proof that factual jurisdiction exists for the Court. As a result, Plaintiffs lack Article III standing to pursue this case and it must be dismissed.

### IV.  <u>ATTORNEY FEES</u>

The Court also considers Defendant Motorola's Motion to declare the suit exceptional under 35 U.S.C. § 285 for the recovery of attorneys' fees. When a suit is dismissed for lack of jurisdiction, the court has the authority to order the "payment of just costs," including attorneys' fees. 28 U.S.C. § 1919; *Willy v. Coastal Corp.*, 503 U.S. 131, 136 (1992) ("[T]here are some circumstances in which federal courts may impose attorney's fees or costs, even where the court eventually proves to be without subject-matter jurisdiction."); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926 (7th Cir. 2000) ("Article III allows an award of other costs of litigation, including attorneys' fees, incurred in the proceedings.")

When, as here, the prevailing party is the defendant, "the presumption in favor of awarding fees is very strong." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). A defendant receives no award from successfully defending a suit, and without fees might be otherwise inclined to enter into a "nuisance settlement or deterred altogether from exercising his rights." *Id.* Here, Defendant was forced to defend twice in district court and once in appellate court against a plaintiff who has no

claim on the underlying patent. The Court finds it has both the authority and reason to order attorneys' fees. The Court grants Defendant Motorola's motion for relief and orders the parties to comply with the procedures set out in Local Rule 54.3(b), (d)-(g) to determine the appropriate fee award. If the parties are unable to come to an agreement, Defendant may file a Fee Petition with this Court on or before December 21, 2021.

### V. <u>CONCLUSION</u>

For the reasons stated herein, the Court dismisses the case for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and grants Defendant Motorola's motion for Extraordinary Relief. The parties are ordered to comply with Local Rule 54.3(b), (d)-(g) as to the size of Defendant Motorola's fee award. If the parties cannot come to an agreement, Defendant may file a fee petition with this Court on or before December 21, 2021.

Harry D. Leinenweber, Judge
United States District Court

Dated: 9/22/2021